Spear *v.* Robinson.

Robert Spear, 2d, *& als. versus* Jacob Robinson, *App't.*

The act of Massachusetts, passed March 6, 1802, entitled "an act to regulate the shad and alewive fishery in the town of Warren," is still in force, so far as to authorize the choice of a fish committee with power to commence suits for the recovery of forfeitures under the second section thereof.

Under an article in a warrant, at a legal meeting in the town of Warren, "to choose selectmen, assessors and all other officers that the law requires, or may be thought necessary," a fish committee may be legally chosen.

A justice of the peace has no jurisdiction of an action, if he were once married to a sister of the plaintiff, whether at the time of the suit she were living or not; and whether the suit were for his own benefit or for the benefit of others.

Where a statute requires that certain town officers shall be freeholders, the choice of a person, who is not a freeholder, is merely void.

Case, against the defendants, for taking and catching 200 alewives in St. George's river, within the town of Warren, on Tuesday, the twenty-fifth day of May, A. D. 1847, without permission, &c.

This action was originally brought before a justice of the peace, by the plaintiffs, as a fish committee of the town of Warren, to recover the penalty accruing to the use of said town, for the alleged unlawful taking of alewives.

At the return day of the writ, the defendant put in a plea to the jurisdiction of the magistrate, of this tenor, "because he says, that Edward Starrett, the said justice of the peace, who issued the writ in said action, and before whom the same is made returnable, is related to one of the plaintiffs in said action by affinity within the sixth degree inclusive, according to the rules of the civil law, and within the degree of second cousin, to wit; the said Edward Starrett married the sister of

the said Robert McIntyre, one of the plaintiffs in the said action, and this defendant has never in any way given his consent that the said justice should act upon the questions arising in said action," &c. To which plea there was a demurrer and joinder in demurrer.

The plea was overruled, the case tried and carried to the District Court by appeal, and before RICE, J. the following facts were agreed to.

The third article in the warrant for the meeting of the inhabitants of the town of Warren, March 1, 1847, was as follows : —

" To choose selectmen, assessors, superintending school committee, fish wardens and all other officers that the law requires, or may be thought necessary by the town." There was no article providing for the choice of fish committee, except the above.

The said meeting was duly and legally called and holden, and a portion of the records of it are as follows : —

" Voted to choose a fish committee. Voted to choose three for said committee. Chose Robert Spear, 2d, John G. Hoffses and Waldo Brackett. Voted that two more be added to the fish committee. Larkin Bogs and Joseph Vaughan, were chosen. It being ascertained that John G. Hoffses was not a freeholder, Robert McIntyre was chosen one of the fish committee in his stead. Chose Reuben Hall and Stephen B. Crooker, fish wardens. Voted to excuse Reuben Hall from serving as fish warden, and David Lermond was chosen in his stead."

It also appeared from the records of the town, that the plaintiffs, and the said John G. Hoffses (who was not a coplaintiff,) severally took their oaths faithfully to discharge the duties of the office of fish committee assigned them by law, and that the said David Lermond and Stephen B. Crooker severally made oath faithfully to discharge the duties assigned by law to the office of fish warden of which oaths separate and formal certificates were made by the clerk.

The plaintiffs, at the time they were chosen, and ever since, have been freeholders, but the said John G. Hoffses was not,

when chosen, and has not since been a freeholder. The facts stated in the plaintiffs' declaration were admitted to be true. The place of taking the fish was upon or opposite to land in occupation of the defendant and situated about a mile below the fish way at the village in Warren.

It was also admitted that the said Lermond and Crooker acted in the capacity of fish wardens for the year 1847, and the plaintiffs, during the same time, as fish committee. That Edmund Starrett, the justice before whom the action was brought, is, and ever has been an inhabitant of Warren, and married the sister of one of the plaintiffs.

It was also agreed, that all rights should be reserved to the defendant in the same manner as though specially pleaded before the justice.

Upon these facts and pleadings, the following questions of law were raised.

1st. Whether the relationship of the justice, before whom this action was brought, to one of the plaintiffs, is sufficient to disqualify him from having jurisdiction in the suit?

2d. Whether the act of Massachusetts, passed March 6, 1802, entitled "an act to regulate the shad and alewive fishery in the town of Warren," &c. is still in force, so far as to authorize the choice of a fish committee and the commencement of this suit by them under it?

3d. Whether the plaintiffs were legally chosen a fish committee?

4th. Whether the plaintiffs under all the facts and pleadings are entitled to recover?

The parties then agreed that the case should be reported for the decision of this Court upon the following stipulations. If this Court shall be of opinion, upon the facts and pleadings in this case, that the plaintiffs are not entitled to recover in this action, they shall direct a nonsuit with costs for the defendant. If they are of opinion that the plaintiffs are entitled to recover, they shall direct a default, judgment to be entered for the plaintiffs for ten dollars and costs.

*M. H. Smith,* for plaintiffs.

The first question raised in this case is, " whether the relationship of the justice, before whom this action was brought, to one of the plaintiffs, is sufficient to disqualify him from having jurisdiction of the suit." To this the plaintiffs say, 1st. The plea does *not* state, that the justice's wife was living at the time of the filing of the plea, nor at the date of the writ ; she may have deceased. The plea does not state that she was his wife at the date of the writ.

2d. The plea in abatement is founded upon Revised Statutes, c. 1, § 3, rule 22, which states, when a person is required to be disinterested, &c. any relationship within the sixth degree shall disqualify, &c. (see the statute.) Plaintiffs contend, that this section refers only to cases in which a person is required *by* the Revised Statutes, to be disinterested, &c. The statute states, the following rules shall be observed in the construction of the following Revised Statutes.

The Revised Statutes no where in terms *require* a justice to be disinterested, and therefore the 22d rule, chap. 1, sect. 3, does not apply to a justice of the peace in any case.

A justice trying a case should by the common law be disinterested, but as the Revised Statutes nowhere in terms require a justice to be disinterested, the 22d rule, R. S. no more disqualifies a justice from trying a case when one of the parties is related to him within the sixth degree, than the same rule would disqualify a witness from testifying, or a justice from taking the acknowledgment of a deed, when one of the parties is thus related to him. The plaintiffs therefore contend that a justice of the peace is in *no case,* under the said 22d rule of § 3, chap. 1, R. S. disqualified from trying a case, by reason of a relationship to one of the parties.

But, if the Court should be of a different opinion, then plaintiffs contend : —

3d. That in the case at bar, the justice is by the statutes, expressly authorized to try cases like the present, although interested. This action is brought by the plaintiffs as fish committee of Warren. The penalty to be recovered is to the

use of the town. Neither of the plaintiffs has any interest in it except so far as they are citizens of the town. The case finds that the justice is and always has been an inhabitant of Warren, and as such he had no interest, and the sister of one of the plaintiffs, whom the justice married (even if she was living, and his wife at the date of the writ,) had no interest, except as inhabitants of Warren. The penalty is recovered for the town, and if defendant prevails the town must pay plaintiffs the costs of a suit which they as officers, chosen by the town, were, by their oath of office, obliged to commence. R. S. chap. 116, sect. 1, provides that in prosecutions for penalties, a justice may have jurisdiction, notwithstanding his town may be interested in the penalty, so that, in the case at bar certainly, a justice is not "required to be disinterested or indifferent," and sect. 3, rule 22, chap. 1, R. S. does not apply to this case, even if it does to cases in general. A special statute of Massachusetts, passed March 6, 1802, vol. 2, page 517, of Massachusetts Special Laws, entitled "an act to regulate the shad and alewive fishery in the town of Warren in the county of Lincoln," section 7th, provides, that all penalties shall be recovered by an action of case or debt, before *any* justice of the peace, within and for the county of Lincoln, and all money recovered shall be to the use of said town. The case at bar is brought to recover a penalty incurred by a breach of this act, sect. 2d, and the practice under this act has invariably been, to bring such actions before a justice residing in Warren. The case, *Fuller & als.* (fish committee of Warren) v. *Spear*, 14 Maine, 417, was thus commenced by one of the learned counsel for defendant.

*E. & S. E. Smith*, for defendant.

The case finds that the justice, Edmund Starrett, married the sister of Robert McIntyre, one of the plaintiffs, and the plea states, what the demurrer admits to be true, that the defendant has never consented that the justice should act upon the questions presented in the case. The case is thus substantially brought within the third section of chap. 1, R. S. rule 22. The definitions of the terms "consanguinity and affinity," are

laid down in Jacob's Law Dic. (title, consanguinity,) as follows : " Consanguinity is a kindred by blood or birth, as affinity is a kindred by marriage." The plaintiff, McIntyre, therefore, and the justice, Starrett, are brothers by affinity, and so of course within the sixth degree according to the statute. Why should not this provision in rule 22 apply ? It cannot be doubted or denied that a justice of the peace should be disinterested in a matter upon which he is to determine. It may be said, perhaps, that this is a rule of construction, given to explain the language used in the statute, and that it not being any where said in terms, that a justice should be disinterested, therefore the rule has no application to this case, but only to cases where such language *is* used. It is true, the statute does not mention a want of interest, as a qualification for a judicial magistrate. Neither does it require him to be of sane mind. Either provision incorporated into a statute would be sufficiently ridiculous. But it is not less a part of the law, that it is unwritten. The statute requires the following officers among others, to be discreet " disinterested " persons, viz : — appraisers of real estate set off on execution ; appraisers to take inventories of the property of deceased persons ; commissioners to assess damages for flowing land ; commissioners to make partition of real estate. These are required not only to be free from pecuniary interest, but by the application of this 22d rule, they must also not be within the sixth degree of relationship, or within the degree of second cousin. Is it less important or less within the meaning of the statute, that a judge who is to decide upon the most important rights of individuals, should be equally free from interest, or from a prejudice in favor of kindred, which often biasses the mind and judgment more powerfully than any pecuniary consideration ? It may be said, again, that the plaintiff to whom the justice is related, although a party, is not " interested" in the event of the suit, since the penalty, to recover which the action is brought, enures to the benefit of the town, and no part of it to the plaintiffs. We answer, that he is interested in the matter of costs, in the same manner as a guardian,

administrator or executor, who is disqualified by such interest from being a witness in actions to which he is a party. *Seers* v. *Dillingham,* 12 Mass. 360 ; *Fox & al* v. *Whitney,* 16 Mass. 118.

The plaintiff is directly liable for costs, if defendant prevail, for which he may or may not have a claim to be reimbursed by the town.

The counsel upon both sides, argued at much length, the other legal questions reported from the District Court. But as the case was determined upon the first point, it is not deemed necessary to insert the residue of the arguments.

The opinion of the Court, (WELLS, J. concurring in the result only,) was delivered by

TENNEY, J. — This case comes before us by a report presenting certain legal questions under the statute of 1845, c. 172. One of the questions is, whether the act of Massachusetts passed March 6, 1802, entitled " an act to regulate the shad and alewive fishery in the town of Warren, in the county of Lincoln," is still in force, so far as to authorize the choice of a fish committee, and the commencement of this suit by them under it. To answer this question understandingly, it is important to ascertain, whether the forfeiture claimed in the action, has been incurred by the defendant, under the statute mentioned ; and if so, whether a fish committee, as required by the same act, is still to be chosen ; and whether, if chosen, they can maintain a civil suit for such forfeiture.

Every part of the statute mentioned, is repealed by that of 1844, c. 126, § 15, so far as it is inconsistent with the latter, and beyond this, it has all its former validity and effect.

By the statute of 1844, c. 126, § 11, all persons are prohibited from taking any of the fish therein described between the fifteenth day of July in one year, and the first day of April in the succeeding year. By the seventh section of the same statute, between the first day of April, and the fifteenth day of July in each year, no person shall take or destroy, in

any of said waters, any of the fish aforesaid, either by means of weirs, nets, or any other implement, apparatus or machinery whatever, except between sunrise on Monday and sunrise on Saturday of any week." By the 11th section, the town of Warren have the right to take fish within that town on Mondays, Tuesdays, Thursdays and Fridays of each week, during the period from the first day of April to the fifteenth day of July. This statute gives the town no right to take fish on Wednesday of each week during the privileged term, and does not exclude others from the right to take on that day and also on Mondays, Tuesdays, Thursdays and Fridays in common with the town ; neither does it confer upon others any such right; but herein it is entirely silent. Hence it is not inconsistent with the former statute, which provides in the latter part of the second section, that if any other person whatever [than those previously mentioned in the former part of the same section,] shall presume to take or catch any of said fish in any river or stream, within the boundaries of said town, without permission from the inhabitants thereof in legal town meeting, he or they so offending, shall for each offence, forfeit and pay a sum not exceeding *thirteen dollars,* nor less than *one dollar,* at the discretion of the justice before whom the offence is tried." The defendant not having the permission required, and having taken fish in the river St. Georges in the town of Warren, on Tuesday the 25th day of May, in the year 1847, has incurred the forfeiture, unless he is protected by being a riparian proprietor. The case finds that the place, where he took the fish on that day, was upon or opposite to land in his occupation and situated about a mile below the fish way at the village in Warren. It is understood that this place is upon navigable tide waters. This question was presented to the Court in the case of *Fuller* v. *Spear,* 14 Maine, 417, and decided that the defendant therein, had no such privileges as he claimed as a riparian proprietor. The statute under which that action was brought is not essentially different from those now in force upon that point.

We are next to inquire, whether the act of 1802 is so far in force as to require the choice of a fish committee as therein provided; and whether, if so required, that committee have authority to commence and maintain this suit for the recovery of the forfeiture incurred. The act of 1844 nowhere repeals in terms the provision of the former act touching the choice of this committee, but if it has left no duty for this committee to perform, in effect it operates as a repeal, and they cannot commence or prosecute in their own names any suit, if such committee have in form been chosen.

All forfeitures for the violation of the provisions of the law of 1844, are to be recovered by complaint before a justice of the peace, if they do not exceed the sum of twenty dollars; otherwise by indictment in the Supreme Judicial or the District Court; complaint to be made for offences mentioned in this act, by any fish warden or deputy fish warden, or any other person. c. 126, § 12. The forfeiture for which the present suit is brought, is for a violation of the former act and is not affected by this provision; it can be recovered only in an action of the case or of debt before a justice of the peace. This is not denied by the defendant, but it is insisted that by the act of 1844, § 6, the power is given exclusively to others, and therefore it cannot be exercised by the fish committee. This section provides, that "it shall be the duty of all fish wardens, and deputy fish wardens, by all lawful means, to prevent the taking or destroying any of the fish aforesaid, in any of the waters, in violation of law, and also to institute prosecutions for all such offences, against this act, as shall come to their knowledge, and prosecute the same to final judgment." The duties of fish wardens and deputy fish wardens are herein divided into two classes; one embraces the general duties of these officers, which they are required "by all lawful means" to perform, to prevent the destruction of fish in "violation of law;" and the other is confined to the institution of prosecutions for offences against the act containing the provision, and pursuing them to final judgment. They are not required in terms to commence suits for the

recovery of the penalties under the act of 1802, and no pro-vision is made in the act of 1844 for the mode in which the suits shall be brought.

If the fish committee have no longer a legal existence, or have no authority to bring suits, who are to take the place of that committee, and become plaintiffs in the actions of the case or of debt for the recovery of penalties under the law of 1802 ?   Are all the fish wardens and deputy fish wardens to join in such civil actions; or can they be brought and maintained in the name of one or more, less than the whole? No provision in the new act meets this inquiry.  It would seem if these officers had so important duties, as the commencement and prosecution of civil actions entrusted to them, that something more than the general language, that they should use " all lawful means" to prevent the destruction of fish, " in violation of law," should be employed.  Wardens and their deputies are clothed with many and various powers and duties by the act, which creates these officers ; the territory over which their supervision extends, embraces several towns ; the deputies may, if judged necessary by the five wardens required, be appointed to the number of seven.  The general duties required of these officers are such, that the sixth section of the act of 1844, has an important signification, aside from the duty to institute prosecutions by civil actions.  These general duties, which are required to be performed " by all lawful means," are to *prevent the destruction* of fish unlawfully ; and do not extend to the taking of measures to recover forfeitures incurred, excepting as an indirect mode of prevention.  And if under the term, " by all lawful means," the commencement and prosecution of civil actions for the recovery of penalties against the old law as well as the new law, was intended, the subsequent requirement, that all wardens and deputy wardens should institute prosecutions for all offences against the latter, would be an unmeaning repetition.  The penalties for violations of the act of 1802, are to be for the benefit of the town of Warren.  They have valuable rights and privileges secured to them as a corporation by that act, as well as by the one of

1844 ; and by the eleventh section of the latter, the town of Warren in taking fish, as is provided in that section, shall be subject to all the provisions of the act of 1802, which are not inconsistent with the provision of the act of 1844. The privilege of taking fish four days in each week is secured to this town, by the new act ; and of prohibiting all others from taking, is secured to them by the old act, as we have seen. The other towns of Thomaston, St George and Cushing, have no such privileges, although they have a majority of the fish wardens.

It is manifestly important to the town of Warren, that they should have guardians, citizens of the town, to take care of an interest so beneficial, as these privileges. And we cannot doubt that it was the intention of the Legislature, in passing the act of 1844, to leave the former law, so far as regards the election of the fish committee, and their duty to commence suits for recovery of forfeitures, under the second section thereof, unrepealed.

2. Another question presented is, whether the plaintiffs in the suit, were legally chosen a fish committee. The third article in the warrant for the town meeting, at which the plaintiffs were chosen a fish committee was in these words. "To choose selectmen, assessors, superintending school committee, fish wardens, and all other officers that the law requires or may be thought necessary by the town." This meeting was held on the first day of March, and it is understood as being the annual meeting for the year 1847.

The article in the warrant was such as practice has sanctioned, and is supported by authority, as being sufficient to authorize the choice of the committee. *Williams* v. *Lunenburgh*, 21 Pick. 75.

The act of 1802, sect. 4, provides, that the fish committee shall consist of not more than seven nor less than three, who shall be freeholders of said town, and who shall make oath or affirmation to the faithful discharge of the duties required of them. The case shows that the town voted to choose five as their fish committee, and they made choice of five persons, but

it appearing, that one of those elected was not a freeholder, another was chosen in his stead ; and that the plaintiffs are those, who were freeholders, and were duly sworn, and have acted as that committee. The choice of the man who was not a freeholder, was a nullity, and the one last elected was chosen in conformity to the provisions of the act.

3. Was the justice of the peace before whom this action was brought, having married a sister of one of the plaintiffs, thereby disqualified, so that he had no jurisdiction of the suit ? The defendant in support of the negative of this question, relies upon R. S. chap. 1, sect. 3, and the 22d rule under that section, which is, " whenever any person is required to be disinterested and indifferent, in acting upon any question, in which other parties are interested, any relationship in either of said parties, either by consanguinity or affinity, within the sixth degree inclusive, according to the rules of the civil law, or within the degree of second cousin inclusive, shall be construed to disqualify such person from acting on such question, unless by the express consent of the parties interested therein." The application of this rule is restricted, by the section cited, to the construction of the following Revised Statutes, and all subsequent statutes, unless the construction should be forbidden by the plain meaning of the Legislature. Hence the plaintiffs insist, that neither the Revised Statutes, nor any subsequent statute, having required that a justice of the peace, to have jurisdiction in a civil suit between party and party should be disinterested, the case is not affected by the rule.

The rule is applicable to all constructions which are to be put upon the Revised Statutes, when from its nature it can apply ; consequently the section embraces the provision therein, by which a person may be acting upon a question in which other parties are interested. Whenever such a case arises, the statute under which the action is to take place, is to be construed by the aid of this rule in order to ascertain the legal meaning of such statute. It is not necessary that the Revised Statutes, or any subsequent statute should require, that a person called upon to act in a certain case, should be disin-

terested or indifferent, in order to render the rule pertinent. It is sufficient if they provide, that such a person is authorized to act generally in cases of the same kind as the one which may be presented; and if by the principles of the common law he must be disinterested or indifferent, the rule is to determine, whether he is so or not. The rule gives the definition of the term, " disinterested" or " indifferent." And whenever a person is either by the common law, the revised or subsequent statutes, required to be so, in order to do any act under the authority of the latter, his qualification to perform such act is to be tested by the definition contained in that rule.

R. S. chap. 116, sect. 1, confers upon every justice of the peace, excepting those residing in a city or town, where there is established a municipal or police court, and the judge of such court is not interested, jurisdiction in the county where he resides, in all civil actions, when the debt or damage demanded, does not exceed twenty dollars, certain kinds of actions, expressly enumerated, excepted. By the literal meaning of this section, a justice of the peace would have jurisdiction of a case where he was a party. But probably no one would contend for such a construction. All would admit, that in certain cases not mentioned as exceptions, he would not be qualified to act. The fair construction would be, that he would be authorized to act according to the provisions of the statute, excepting in certain cases, in which there would be a specific personal disability, as being a party, or otherwise interested to such an extent, as to be by well settled principles disqualified.

The case before us is one, where a construction is to be put upon the statute, chap. 116, sect. 1. Is the justice before whom this suit was brought, so disqualified, that he could not take jurisdiction of the cause? His authority as a justice is by virtue of the provision referred to. He was called upon as a justice to do acts upon a question, in which others were parties, if he took cognizance of this suit. We apprehend, that there can be no doubt of the necessity of applying the rule in de-

termining whether he had jurisdiction or not. If he was disinterested by that rule, his jurisdiction was ample ; if he was not disinterested, he had none, excepting where he had no other interest than that as a citizen of the town of Warren, which by the same section does not amount to a disqualification.

But if the rule can be applied only in those cases, where the statutes themselves require, that the person should be disinterested or indifferent, it is believed that its aid is still to be invoked in the construction to be given to the statute, under which the justice acted. A requirement may be by implication as well as by direct provision. A justice of the peace has jurisdiction in cities and towns, where a municipal or police court is established, if the judge of such court is interested ; and also in cases where the town, in which the justice resides is interested in the penalty for the recovery of which the prosecution is instituted, he has jurisdiction, if otherwise entitled to exercise it. A judge of a municipal or police court has no jurisdiction over suits in which he is interested. It must have been intended that the same cause should disqualify a justice. And if it was designed that a justice should have jurisdiction, notwithstanding he should be interested, the provision that he should not be disqualified by the interest of the town, of which he was a citizen, in a penalty, sought to be obtained in a prosecution before him, would be totally unnecessary. The words, " if otherwise entitled," clearly imply, that any other interest than the one expressed, takes from him his jurisdiction.

But it is contended for the plaintiffs, that by the pleadings in the case, it does not appear, that the sister of one of the plaintiffs, whom the justice married, was at the time when the action was commenced and entered, his wife, and hence, it is not shown that at the same time, the disqualifying relationship existed. It is true, that the case presents nothing which proves that the woman, whom the justice married, was then his wife, and upon such an issue as is made by the pleadings upon this point, nothing can be inferred. But did the relationship

produced by the marriage of the justice and the plaintiff's sister cease, if that marriage was dissolved.

Mr. Webster, in his Dictionary of the English language, defines *affinity* to mean " the relation contracted by marriage between a husband and his wife's kindred, and between a wife and her husband's kindred, in contradistinction from *consanguinity*, or relation by blood." By the marriage, one party thereto holds by *affinity* the same relation to the kindred of the other, that the latter holds by *consanguinity*. And no rule is known to us, under which the relation *by affinity* is lost on a dissolution of the marriage, more than that by blood is lost by the death of those, through whom it is derived; the dissolution of a marriage, once lawful, by death or divorce, has no effect upon the issue; and it is apprehended, it can have no greater operation to annul the relation by affinity, which it produced.

It is contended, that the justice had jurisdiction by express provision of Revised Statutes, c. 116, § 1, in the last part of the section. The whole meaning of this part of the statute is, that the justice being a citizen of the town entitled to the penalty, does not disqualify him from taking jurisdiction.

It is again insisted, that the plaintiffs sue in this kind of actions solely for the benefit of the town, and therefore, they have no interest; and consequently on that account the justice is not disqualified. The plaintiffs are liable for costs if the defendant should prevail; and whether the town would be answerable to them, would depend upon facts, which cannot here be introduced or considered. Even if the town should be eventually liable, it is not apprehended, that this would remove the disqualification. The statute is imperative, that such a relation as here exists, shall be sufficient to constitute a want of jurisdiction. *Judgment for the defendant.*