### GRAND NIECE RELATED BY AFFINITY TO THE INSURED.

Circuit Court of Cuyahoga County.

E. L. HESSENMUELLER, EXECUTOR, v. BARBARA SIRILO ET AL.

Decided, December 30, 1912.

*Mutual Benefit Insurance—Beneficiary may be Related by Affinity after Dissolution of Marriage on Which it Depends.*

The grand-niece of the husband of a member of a fraternal benefit society is a person related by marriage within the meaning of Section 3631-16, Revised Statutes, which provides that anyone so related may be the beneficiary of a fraternal insurance certificate, and such relationship continues after the death of the husband upon whom the relationship depends.

*E. L. Hessenmueller* and *W. J. Hamilton*, for plaintiff in error.

*D. B. Stone* and *J. C. Bloch*, contra.

MARVIN, J.; WINCH, J., and MEALS, J., concur.

Barbara Sirilo brought a suit against the Amerikai Reformatus Magyar Eygesulet, claiming to recover the sum of $750 from such defendant. The defendant in the original action is a fraternal benefit society, organized under the laws of this state. The plaintiff claimed to recover because, as she averred in her petition, she was lawfully designated as the beneficiary in a certificate for benefits which was issued to one Mary Onody, who had been a member of the society and had died prior to the bringing of this suit.

The society, by way of interpleader, set out that Mary Onody was a member of the society in good standing·at the time of her death; that the association was indebted to some person by reason of the membership and death of Mary, to the sum claimed in the petition, but that one John Gedeon, and also E. L. Hessenmueller, as the executor of the will of Mary Onody, deceased, each claimed to be entitled to have the amount paid to them and asked for the direction of the court.

Hessenmueller, as such executor, filed an answer and cross-petition claiming the fund, and Gedeon also filed an answer and cross-petition claiming the fund, and it is these rival claims which were before the court of common pleas in the trial of the case.

The result of the trial was that the court ordered the money paid to the plaintiff below, the case having been tried to the court without the intervention of a jury.

The trial judge prepared an opinion in the case, which we think fully justifies the conclusion reached.   We know of no rule of law which would entitle the executor of the will of the deceased to this fund.

The claim of the husband is based upon the proposition that the deceased died leaving no lineal descendant, and that he is therefore the heir at law of the deceased.

The plaintiff below shows that she is the granddaughter of a sister of a former husband of the deceased.

Under Section 3631, Revised Statutes, subdivision 16, which was in force at the time when the rights under this membership became fixed, a member of the association had a right to designate as the beneficiary any person related by blood or marriage to the member.

The question was raised in this case whether the plaintiff below was such relative of the deceased, and also whether she ever was properly designated as the beneficiary, and further, whether under the by-laws of the organization she might be designated.

Of course, no person would be entitled to the payment of the money, even though properly designated, unless the person designated was a relative of the deceased within the meaning

of the statute. The society could not, by any by-laws, enlarge the class of persons, beyond the statute, who might take as beneficiary. It might, however, restrict the classes, always keeping within the limits of the statute.

The official language of the association is declared in its by-laws to be the Hungarian language, and its laws are printed in that language.

On the trial witnesses were examined as to the meaning of certain words used in the by-laws, the contention being on the one side that the only person who could be designated must be an heir at law, as that term is used in the statutes of Ohio, but we think the evidence fairly shows, as pointed out by the trial judge in his opinion, that the language of the by-law did not intend to restrict the class of beneficiaries to those who might, under the laws of Ohio, be heirs at law. The word "heir" is frequently used in common parlance among the English-speaking people, as meaning one to whom the property of a deceased person goes either by descent or by will, and it is shown in the evidence, as we think fairly, that it was in this broad sense that the words are used in the by-law.

And so we reach the conclusion, as the court below did, that those who might legally be designated by members as beneficiaries under the certificate includes all those who, under the statute of Ohio, might be so designated; and we come to consider, therefore, the question of whether the plaintiff below comes within those enumerated in the statute as competent to be designated as such beneficiary.

If she was related at all to the deceased member, it was by marriage. There was no consanguinity between her and the deceased member, but she was, from the facts stated, a grand-niece of the former husband of such deceased member. She was related to that husband by blood; she was the granddaughter of his sister. Without question had he been a member he might have designated the plaintiff below as beneficiary and it has been so held by many authorities, as shown by the citation made in the opinion of the court below to Bacon's Benevolent Societies, at page 621.

Authorities which seem to be directly in point are:

*Sinko* v. *Grand Lodge,* 84 Ia., 383:   The statute provided that no beneficial certificate should be issued unless the beneficiary be the husband, wife, relative, legal representative, heir or legatee of the insured, and it was held in these words:

"A stepfather is a relative by affinity, and the relationship continues after the death of the wife on whom the relationship depends."

In the case of *Spear* v. *Robinson,* 29 Maine, 531, it is said:

"By marriage one party thereto holds, by affinity, the same relation to the kindred of the other that the latter holds by consanguinity, and no rule is known to us under which the relation by affinity is lost, on a dissolution of the marriage, more than that by blood is lost by the death of those through whom it is derived.   The dissolution of a marriage once lawful, by death or divorce, has no effect upon the issue, and it is apprehended it can have no greater operation to annul the relation of an affinity which it produced."

In the case of *Bennett* v. *Van Riper,* 47 N. J. Eq., at page 563, it was held:

"Under a beneficial certificate which read:  'Each beneficiary member, the person or persons designated by said member related to, or dependent upon him or her, shall be entitled, under the prescribed regulations and conditions,' etc., the words 're-lated to' include persons connected by affinity as well as by consanguinity."

Our statute, it will be noticed, goes further than the language of this certificate last quoted from, because it in express terms provides that a beneficiary may be one related to the member either by blood or marriage, so that the plaintiff below in the present case might be held to be a relative of the deceased mem-ber without going so far as the court went in the last case mentioned.   In the case of *Bennett* v. *Van Riper, supra,* this language is used in the opinion, and it appeals to us as entitled to great weight; speaking of the word "relative" or "relations":

"When used in a contract, as in this case, I do not find that it has such a fixed and definite meaning that we must thwart the purpose of this decedent, who supposed that, by the terms of

the article giving him control of his benefit in the relief fund, he could bestow it on any one of those popularly called relatives whom he might select. It seems also that a liberal rather than a restricted meaning given to the word 'relative,' used in this article of the association, would better comport with its benevolent purpose. The construction contended for against this certificate would exclude a member's wife, unless she came within the other part of the phrase by being dependent on him for her support. The ties of affinity are often stronger than those between collateral or even lineal kinsmen by blood; and there is nothing unreasonable in saying that this certificate was made payable to one whom the holder supposed was properly classed among his relatives, and that the council so intended. Where there is no fixed legal or technical meaning which the court must follow in the construction of a contract, then 'the best construction,' says Chief Justice Gibson, 'is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it. A result thus obtained is exactly what is obtained from the cardinal rule of intention.' "

There remains only the question whether the deceased member ever did designate in a lawful way the plaintiff below as such beneficiary.

From the evidence it is clear that she intended to, and in fact that she did all·that she needed to do to make such designation, and the designation would have appeared upon the records of the association but for the failure on the part of the general secretary to make the entry in the record which he should have made, and this, he says, was because he overlooked the matter. He was called upon by the member, who brought with her the plaintiff below, and said to him that she was a relative and that she was the one that was to take under the certificate. He took the name down on a slip of paper, and simply overlooked it.

By releasing the funds to the plaintiff below, the court clearly carried out the desire and intention of the deceased member, whose right it was to say to whom this fund should go. As has been pointed out, she did all that was required of her to make the designation, and the person whom she intended to make beneficiary, and whom she undertook to make the beneficiary, should not be deprived of the benefit

which the member undertook to confer upon her, unless some fixed rule of law makes it necessary to so deprive her. We find no such fixed rule of law. On the contrary, the law seems to be in accordance with what seems clearly to be just and right in this case. The court below so found, and its judgment is affirmed.