C. C. AND R. O. JOHNSON v. JOSEPH RICHARDSON ET AL.

1. NOTICE — ADMINISTRATOR'S SALE.—Where there was no evidence affirmatively showing the length of time for which notice was given of an administrator's sale of land, and the deed executed to the purchaser did not, by its recitals, show the absence of due notice, the court did not err in refusing to charge in regard to the question of notice of the sale as affecting the title of the purchaser.

2. FRAUD—CHARGE OF COURT.—When the issue of fact made by the pleadings was as to the existence of a fraudulent understanding between the administrator and the purchaser of land at administrator's sale, under which the former was to have an interest in the land, there was no error in refusing to instruct the jury that various circumstances enumerated constituted badges of fraud. The issue was not as to the intention with which the sale was made, but the existence of a fraudulent agreement.

3. DECLARATIONS—EVIDENCE.—The declarations of an administrator in possession of land formerly sold by him at administrator's sale, not made in the presence of the purchaser, are not admissible, in a proceeding to set aside the sale, to establish the charge of an agree-

31

ment between the administrator and the purchaser that both should be equally interested in the purchase.

4. IMPEACHING WITNESS—EVIDENCE. — Where a witness testifies by deposition in regard to a conversation with another, and in response declares that if the conversation referred to occurred, he did not then know or recollect it, he cannot be impeached by proving by another the conversation, the witness not denying the matter and having no opportunity to explain.

5. JUROR.—That the sister and niece of a juror are the wives of two of the brothers of a party to a suit, constitutes no ground of disqualification.

6. VERDICT.—See statement and opinion, as to a general verdict, where special findings were directed, which was sufficiently responsive to the charge on the main issue, and held good.

7. JUDGMENT. — Though a judgment should set forth the full names of the parties for and against whom it is rendered, a failure in this respect will not be cause for reversal, in the absence of an assignment of error pointing out the defect.

8. PRACTICE.—See opinion for the individual views of Associate Justice Gould, as to the power of the court in ordering a destroyed judgment substituted without the intervention of a jury.

APPEAL from Liberty.   Tried below before the Hon. Edwin Hobby.

Suit was brought in the District Court of Liberty county, March 31, 1876, by C. C. and R. O. Johnson, for the purpose of setting aside a sale of a tract of land containing about four hundred acres, and canceling a deed under a sale made by H. C. and Cornelia Stone, joint administrators of the estate of E. T. Branch, deceased.   The administration upon the estate was opened in 1867, and was closed in December, 1875.   The heirs of the estate were made parties defendant with Joseph Richardson, to whom the sale on first Tuesday (the 7th day) in October, 1868, and the conveyance dated November 5, 1868, purported to be made, and who were then in possession of the property.

The plaintiffs sued as creditors of the estate, they being the owners of a judgment in favor of Charles L. Cleveland, as executor of Lucy Johnson, deceased, mother of plaintiffs, for the sum of $6,880, rendered on the 21st of February, 1870.

Their claim was originally a promissory note for $4,300, bearing date July, 1860, which had been presented February, 1868, and rejected by Stone, the administrator, established by suit, and ordered to be paid; but while the suit to establish the claim was pending, all the property of the estate had been sold out, and nothing had been paid them.

The plaintiffs were minors during this time. C. L. Cleveland, their uncle, was their guardian. The record of the deed to Richardson was burned in December, 1872, and the record of their judgment and proceedings of the Probate Court were also destroyed by fire in December, 1874.

The grounds upon which the sale and order to confirm the sale and conveyance were sought to be set aside, are—

1st. That the sale was made without the legal notice, and was not made in conformity with law and the order of court ordering the sale.

2d. That the sale was made for a grossly inadequate price, and in such manner and at such times as to prevent bidding thereon, and was unfair; that the tract was well improved, and only brought $422.50; and that this was less than one-tenth of its value.

3d. That the land did not bring three-quarters of its actual value, and did not bring a sufficient proportion of its actual value to give the court jurisdiction to confirm the sale.

4th. That the administrator furnished the purchase-money, and so became the real purchaser of the property.

5th. That the administrator and Richardson colluded together and purchased it with the agreement that Stone, the administrator, was to remain in possession and have a half-interest in the property and rents and profits, which was so accordingly done, Stone paying no money, but allowing Richardson half of what he bid it in at, for an undivided half of the property.

6th. That the property was not sold to the highest and best bidder; that Wharton Branch and his sister Anna held preference claims, amounting to $518, to pay which the land was

sold; that he offered to bid, and did bid, and that the bid was refused; that he would have made the land bring $518, or bid it in, and that if the tract had sold for enough to pay the preference claims, the balance of the estate would have gone to pay the creditors.

Plaintiffs offered to repay all sums of money paid out for the land for the benefit of the estate, and, as part of their relief, prayed that their judgment be substituted, and that the land be subjected to the payment of their debt.

After the filing of the suit, one of the heirs of E. T. Branch having died, G. W. Davis was appointed to represent her minor child, Edith C. Cade; and Joseph Richardson having also died, his widow and executrix, Jane Richardson, was made defendant.

The answers of Briggs and wife and Moss and wife asked that no judgment for costs be entered against them.

The answer of Edith C. Cade, by her guardian *ad litem*, G. W. Davis, adopted the averments of plaintiffs' petition and prayer, in so far as it sought to set aside the sale and order confirming sale and conveyance to Richardson.

After the jury was impaneled it was discovered that one Sam Johnson was a member of the jury, whose sister and niece were the wives of two of Mrs. Richardson's brothers, John and Sam Partlow, the name put on the jury list having been S. H. Johnson, and plaintiffs supposing it to be another person, failed to challenge him by reason of the mistake. This fact appears only in the motion for new trial sworn to. No supporting affidavits were filed.

Henry Deneke, C. B. Garrard, Cornelius Devore, and Joe Hart, Robert Daniel, Frank Cudrich, and William Rouse, having stated, on the trial, that at divers times during the year 1869 said Stone, who was then administrator of E. T. Branch's estate, and then in possession of the land in controversy, raising a crop thereon, said to them that he was equal co-owner with Richardson in the cabins, fences, and improvements on the land, and in the crops then growing

thereon, and in the horses and mules and farming utensils thereon, and were equal owners and partners in the land, and his share in all of which he offered to sell, and that part of Stone's statements relating to the land having been objected to by defendant Richardson, was excluded by the court; to which plaintiffs excepted.

The court also, on objection of Richardson, excluded the testimony of H. Dencke, C. Devore, C. B. Garrard, and others, offered to contradict and explain testimony of H. C. Stone, whose deposition had been taken by Richardson, and for whom he was the material witness; the testimony excluded being that Stone, while administrator and while in partnership with Richardson, and in possession of the land, had said to the witnesses that he had furnished Richardson the money with which he had bought in the place, and that Richardson had conveyed to him on that account one-half the land for one-half of what Richardson had bid in the same; to which plaintiffs' ruling excepted. Other facts in this regard will be found in the opinion.

The plaintiffs' counsel also asked the court to charge the jury that fraud may be proven by circumstances, and that gross inadequacy of price, the remaining in possession by the vendor and the partnership by the administrator and vendee in cultivating the land sold, and subsequent ownership of one-half of the land during the following year, &c., are circumstances, if proved, from which the jury may infer fraud; also that the sale required twenty days' notice thereof to be given; that an administrator is not allowed by law, no matter how fairly he may in other respects appear to act, to buy in property of the estate sold by him, or to purchase any interest therein, directly or indirectly.

The charge of the court submitted to the jury two issues,— that the suit was instituted first to substitute a judgment against the estate of E. T. Branch, and second, to set aside a sale to a tract of land and cancel the title under said sale made to defendant Richardson,—and directed the jury, if they be-

lieved the judgment was obtained and the record had been destroyed, "to find for plaintiff, and say in your verdict, ' We, the jury, find for the plaintiffs on the first issue,'" &c., with a further charge referred to in the opinion.

The verdict on this charge was: " We, the jury, find for the defendant,"—without containing the names of the parties for and against whom it was rendered.

The plaintiffs made their motion for new trial, setting up: "* * * 2d. The excluding the declarations of H. C. Stone, while in partnership with Richardson and in possession of the land, explanatory of the possession and extent of the partnership. 3d. The excluding the testimony of C. Devore, C. B. Garrard, and others, to explain and contradict Stone's testimony. 4th. The refusing the charges asked for. 5th. That the verdict is not responsive to the issues presented in the charge, or either of them. 6th. That the verdict is defective and cannot support a judgment, and although the evidence to prove the first issue was uncontradicted and conclusive, yet the verdict was contrary thereto. 7th. That the juror Sam Johnson was doubly related to defendant Richardson, his sister and niece having married two of Mrs. Richardson's brothers, and that it was not known to plaintiff until after the impaneling of the jury that this Sam Johnson was the person meant by S. H. Johnson, the name put on the jury list, or he would have been challenged; that he became the foreman of the jury, which was supported by affidavit. 8th. Other errors apparent of record. The minor, Edith Cade, moves the court for a new trial for all these grounds, and, in addition thereto, that the charge is not a clear statement of the law of the case; that the second paragraph of the charge precluded the jury from arriving at the conclusion that the administrator was the real purchaser; that the portion of the charge directing the jury to find for Richardson on the second issue is so expressed and stands in such condition with respect to the whole charge as must have misled the jury; and that the charge failed to

separate questions of law from those of fact, and left the jury
the solution of mixed questions of law and fact."

The plaintiff, amongst other questions, on cross-examination
of H. C. Stone, by deposition, asked him if Richardson did
not hold his warranty deed for one-half the land in contro-
versy, and he answered: "I think he does." Whether Rich-
ardson ever gave him any conveyance, or receipt, or agreement
for part of the land, and also the dates and contents of any
deed, or receipt, or document by either Stone or Richardson
to the other, he answered: "I don't think I ever had any con-
veyance from Richardson." Being asked if he did not offer
to sell H. Deneke one-half the land during the year 1869, he
answered: "I don't remember telling Deneke anything about
it. I may have proposed to sell one-half the land, but don't
know to whom, or where, or when; don't know or remember
any conversation on the subject." Being asked if he did not
lend Richardson the purchase-money for which he bid in the
land, and if he did not tell Cornelius Devore so, and that
Richardson had conveyed him one-half of the land on account
of it, he answered: "I may have loaned him the money; I
may have told Devore so." Being asked, "Did you not get
your one-half of the land from Richardson? And if so, is it not
true that you paid him no money, and only allowed him one-
half of what he bid it in at?" he answered: "My recollection
is, that it was one-half what he bid it in at." And being asked
if he had not stated, shortly before the sale, to C. B. Garrard
and others, that he was prevented by law from buying in the
place in controversy, that it was a lame thing in law, for he
would pay more than any one else, he answered: "My recol-
lection is, I said to some one that I would not buy the land be-
cause I was administrator; don't remember any other remark."
It was proposed to contradict and explain these answers of the
witness; the evidence was excluded on the ground that they
were declarations, and disparaged Richardson's title, Richard-
son being vendee of Stone in his character of administrator

of E. T. Branch.    Other facts stated by Stone will be found in the opinion.

The statement of facts describing the deed from H. C. Stone and Cornelia Stone states that the deed recites "that an order was made at the October Term, 1868, of the County Court of Liberty county, reviving its order of sale made at the former term, which sale was made on the 7th of October, 1868, and of the property in controversy, and that return of sale was made on the 26th of October, 1868, and ordering the administrators, H. C. Stone and Cornelia Stone, to make title to the purchaser, Richardson, upon his complying with the terms of sale, and describing the metes and bounds of the land in controversy."

The court instructed the jury as follows:

"1st. Any judgment of a court of record in this State, and which record of the court containing such judgment has been destroyed, may be supplied by parol proof of the contents thereof.    If, from the evidence, you believe that plaintiffs, through the executor of Lucy Johnson, obtained a judgment against E. T. Branch's estate for $6,880 on February 21, 1870, that it was destroyed as alleged, you will find for the plaintiffs, and say by your verdict, 'We, the jury, find for the plaintiffs on the first issue.'

"2d. A sale made by and in accordance with a regular and lawful order of the Probate Court, of real property belonging to an estate administered therein, and a confirmation thereof by said court, vests in the purchaser at such sale a good and valid title, unless an agreement, or understanding, or collusion of some kind existed between the purchaser and the administrator is shown to have existed at the time in respect to such sale, and which agreement, understanding, or collusion was to the injury of said estate.

"3d. If, from the evidence in this case, you believe that Joseph Richardson became the purchaser of the tract of land described in the petition at a *bona-fide* sale of said land made by order of the Probate Court of this county, and that said

sale was confirmed by said court, you will, in that case, find for the defendant, Jane Richardson, on the second issue.

"4th. If, from the evidence, you believe that said sale was procured and obtained by any agreement, understanding, or collusion between Joseph Richardson and Stone, the administrator of Branch's estate, and which was injurious to said estate, or made for the purpose of enabling Stone to become the owner, in whole or in part, of said land, then, if you so believe, you will find for the plaintiffs on the second issue.

"If you find for the plaintiffs on the second issue, you will assess whatever the evidence may show the value of the rents to be from the date of sale to this time."

*Wharton Branch,* for appellants.

I. The admissions of one partner, made during the partnership, are admissible against the other partners to show the extent of the partnership and the property included in it; and the declarations of one in the possession of real estate are always evidence to explain that possession, and more especially where they tend to establish fraud.

The evidence all shows Stone to have been in possession of the land before the sale in October, 1868, made by him as administrator, and that he remained in possession thereafter and superintended the cultivation of the farm during all the year 1869, and that he and Richardson were partners in the crops. (Tuttle *v.* Turner, 28 Tex., 759; 26 Tex., 491, 558; 14 Tex., 72; 27 Tex., 67, 328, 573; 20 Tex., 236; 5 Tex., 584; 18 Tex., 496; 1 Phil. on Ev., pp. 33, 380, 390–392; 1 Cow. & Hill's Notes to Phil. on Ev., pp. 217–222.)

II. A witness may be always contradicted and his testimony explained when he denies or evades the questions of the adverse party, the proper basis therefor having been laid. (Ayres *v.* Duprey, 27 Tex., 601; Bigham *v.* Carr, 21 Tex., 147; 2 Cow. & Hill's Notes, pp. 716, 717, 758, 759; 2 Phil. on Ev., pp. 432–435.)

III. An administrator's sale made in any manner other than

prescribed by law and the decree of court ordering it, is void; and twenty days' notice of sale is especially required, and that, with the decree ordering and confirming the sale, shall be recited in the deed.

The deed on its face shows that the order of sale was made at the October Term, 1868, and that the sale was made on the first Tuesday (the 7th day) in October, 1868, which was less than twenty days; that return of sale was made October 26, 1868. The deed fails to recite that notice of sale was given, or that an order was made confirming said sale, or that said sale was made at the court-house door, but shows an order made at the October Term renewing the order of sale of a former term, and sale made immediately. (Paschal's Dig., arts. 1246, 1325, 1327; Laws of 1866, p. 44; Tippett *v.* Mize, 30 Tex., 365; Brown *v.* Christie, 27 Tex., 75.)

IV. The county judge had no power under the law then in force to approve the sale unless the property sold brought three-fourths of its actual value; and this tract did not bring it. (Laws of 1866, sec. 2, p. 127.)

V. The administrator shall not become the purchaser, either directly or indirectly, of any of the property of the estate sold by him, (which Stone did,) and no matter how fairly he may, in other respects, seem to act, the bare fact that he does so makes the sale void, and he and those acquiring under him with notice shall hold the same in trust as assets of the estate.

It is not a question whether the estate is injured thereby or not; it is forbidden by law. (Paschal's Dig., art. 1328; Merriman *v.* Russell, 39 Tex., 285; Id., 558; Hamblin *v.* Warnecke, 31 Tex., 94; Smith *v.* Strahan, 16 Tex., 320; Neill *v.* Keese, 5 Tex., 29; Dodd *v.* Arnold, 28 Tex., 101; Withers *v.* Patterson, 27 Tex., 491.)

VI. The judge has no right to select one out of several issues and submit that one only to the jury, and at the same time refuse charges asked as to the other issues. It is not material to the plaintiffs if the sale be set aside for want of notice, or for not bringing three-fourths its actual value, or for

gross inadequacy of price and refusing and suppressing bids, or for the administrator having participated in the purchase. The plaintiffs had a right to have all these questions submitted to the jury. If proven, any of them will avoid an administrator's sale. (Hall v. Layton, 10 Tex., 60; Smithwick v. Andrews, 24 Tex., 494; Rule for Dist. Ct., 60a; 47 Tex., 628.)

VII. Gross inadequacy of price and slight additional circumstances are sufficient to cancel the sale, and the administrator cannot sell to and buy from himself. It takes two to contract, and a valid consideration to support it. (Johnson's Administrator v. Shaw, 33 Tex., 590; Allen v. Stephanus, 18 Tex., 671; Mackey v. Martin, 26 Tex., 61; McFaddin v. Vincent, 21 Tex., 57; Burch v. Smith, 15 Tex., 223; Chamblee v. Tarbox, 27 Tex., 145; Id., 478; Hamblin v. Warnecke, 31 Tex., 94.)

VIII. That the judge, by refusing to instruct the jury, on the issues made, what facts, if proven, are fraud *per se,* and from what facts fraud may be inferred, precludes the jury from finding a verdict on that issue. The jury cannot find what they do not know, and they know no law except as they receive it from the court. (Mills v. Walton, 19 Tex., 271; Howerton v. Holt, 23 Tex., 61; Walcott v. Brander, 10 Tex., 424; Gibson v. Hill, 21 Tex., 228; Chamblee v. Tarbox, 27 Tex., 145; Thompson v. Shannon, 9 Tex., 538; Stadtler v. Wood, 24 Tex., 624; Van Hook v. Walton, 28 Tex., 73; Act of 1866, p. 127; Cox v. Shropshire, 25 Tex., 126.)

IX. There is no hypothesis in the charge under which the jury could find for plaintiff. The fourth paragraph controlled and misled them into the idea that the order confirming sale could not be set aside, and that if confirmed, the fairness of the sale was *res adjudicata;* and the fifth paragraph controlled and misled them into inquiring whether the order of sale was obtained and procured properly, which was not in issue at all, and misled them from the inquiry of whether the sale itself was made fairly and legally in all respects, which was the real issue. (Love v. Wyatt, 19 Tex., 315; Gilkey v. Peeler, 22

Tex., 669; Giddings v. Steele, 28 Tex., 748; Hamblin v. War-
necke, 31 Tex., 94; Tippett v. Mize, 30 Tex., 365; Brown v.
Christie, 27 Tex., 75; Withers v. Patterson, 27 Tex., 496; Bec-
ton v. Alexander, 27 Tex., 667; Crain v. Crain, 17 Tex., 85.)

X. When a juror who is disqualified by his bias or preju-
dice, or being related within the third degree, or interested in
the suit, foists himself on the jury, and it is not discovered
until after the jury is impaneled, the only remedy against a
fraud of this sort is by motion for new trial, and it ought to
have been granted in this case without any question. (Mc-
Gehee v. Shafer, 9 Tex., 24; Thomas v. Zushlag, 25 Tex. Supp.,
229; 21 Tex., 527; 43 Tex., 574; Rev. Stats., arts. 3012,
3088–3097.)

*E. B. Pickett*, for appellees.

GOULD, ASSOCIATE JUSTICE.—On October 7, 1868, a certain
tract of land was sold by H. C. Stone and his wife Cornelia,
administrators of the estate of E. T. Branch, deceased, under
an order of court to raise an allowance for the minor heirs of
said estate; and return of sale to Joseph Richardson having
been made, the County Court made its order confirming the
same and directing title to be made to Richardson upon his
payment of the purchase-money.   Conveyance was accord-
ingly made, of date November 5, 1868.

This suit was instituted in March, 1876, within two years
after the close of the administration, by the plaintiffs, as owners
of a large established claim against said estate, seeking to have
said sale and the order confirming it set aside, and the land
subjected to the payment of their claim.

That claim was originally presented by the executor of the
estate of Lucy Johnson, the mother of plaintiffs; was rejected
by the administrator of Branch's estate, and was, it was alleg-
ed, established by suit, resulting in judgment in February,
1870.   The records of both District and County Courts hav-
ing been destroyed by fire, one prayer of the petition was, to

have the judgment substituted, the heirs of the estate of Branch being made parties defendant. The grounds upon which the sale was sought to be set aside were:

"1. That the said sale was made without notice.

"2. That said sale was made for a grossly inadequate price.

"3. That the land in suit did not bring a sufficient proportion of its actual value in order to give the court jurisdiction to confirm said sale.

"4. That the administrator furnished the purchase-money; that in so doing he acquired the equitable title, and became himself the purchaser.

"5. That Joseph Richardson and the administrator colluded together and purchased the property, with the understanding and agreement that said Stone was to run the place and divide the profits, and to afterwards convey to said Stone one-half of the property."

The result of the trial was a general verdict and judgment in favor of defendant. Appellants complain that the court by its charge does not submit to the jury all of these grounds, and refused to give charges asked on the others.

In regard to the alleged want of twenty days' notice of the sale, we remark that the plaintiffs introduced no evidence whatever tending to establish the averment, or to charge the purchaser with notice or knowledge of any such irregularity. Without intending to intimate that such an irregularity would, of itself, constitute a ground for setting aside the sale, we hold that the confessed recitals in the administrator's deed did not show the absence of due notice, and that the court did not err in declining to charge on that issue.

In support of a proposition that the court had no power to approve the sale unless the property brought three-fourths of its actual value, appellants refer to section 2 of what is commonly known as the stay law of 1866—a statute which has been held unconstitutional and invalid. (Jones *v.* McMahan, 30 Tex., 719.)

There was no error in the refusal of the court to instruct

the jury that various circumstances enumerated were badges of fraud. The issue of fact was not as to the intention with which the sale was made, but as to the existence of a fraudulent understanding between the administrator and purchaser, under which the former was to have an interest in the land. Whether a deed be made with a fraudulent design, and whether an administrator's sale be made in pursuance of an understanding between administrator and purchaser, are different questions. The court rightly refused the charge, and left the weight of the evidence to be passed on by the jury.

In our opinion, the charge of the court fairly submitted to the jury the only ground alleged on which, under the evidence adduced, the plaintiffs were entitled to have the jury to pass, namely, the existence of any collusion or understanding between Richardson and the administrator that the latter should buy the land for their joint benefit.

The jury, under a fair charge, having found that issue of fact in favor of defendant, that verdict is decisive of the case on its merits, and the judgment should not be disturbed unless the record discloses some error entitling appellants to another trial.

We find no such error in the rulings of the court excluding evidence of statements by Stone, made whilst in possession of the land, after the administrator's sale, but in the absence of Richardson, that he and Richardson were equal owners of the land. The court excluded them on the ground that the reality of the joint ownership was the question in controversy, and we think correctly.

But, in truth, the witness Stone had himself testified that Richardson, after buying the land, sold him one half-interest in it, if witness would control it and manage the workmen; that he had no conveyance from Richardson, or receipt, or agreement, (written,) and that he thinks he allowed Richardson one-half of what he bid in the land at for the half-interest. It abundantly appears from Stone's testimony and that of others, that he and Richardson agreed to farm in partnership on the

land, and did so in 1869—disagreed about a settlement—arbitrated their differences, resulting in a division of the land and in a sale by Stone of his half to Richardson, either directly or through the intervention of one of the arbitrators. We are unable to see that the evidence excluded amounted to anything more than Stone himself testified to. The bill of exception tions does not show that it was proposed to prove Stone's statement that Richardson and he had any agreement to buy jointly, nor to connect Richardson with any statements made by Stone. The evidence excluded was merely cumulative, and the exclusion, even if erroneous, does not appear to have worked any injury to appellants.

The evidence offered for the purpose of contradicting or explaining the statements of Stone was rightly excluded. The witness had not answered denying the conversations about which he was interrogated, otherwise than that, if so, he did not know or recollect. Stone's testimony having been taken by interrogatories, and he having no opportunity to explain, it was not error to exclude the evidence tending to contradict him. (Weir *v.* McGee, 25 Tex. Supp., 21, and authorities cited.) Especially was this not error, when the matter about which Stone was interrogated was inadmissible or immaterial as against Richardson.

Although Stone, as the husband of one of the heirs, was a party to the suit, it does not appear that any relief was sought against him. Yet it would seem throughout as if the case against Richardson was only sought to be established by proving Stone's admissions or acts.

Two of the assignments of error have reference to the jury. The first, in regard to the action of the court in excusing a juror, is not supported by the record. In regard to the second, it does not appear that the juror was disqualified by relationship or otherwise; nor, if he were, that the failure to object to him on that ground was excusable.

The court told the jury that the suit was brought, first, to substitute a judgment, and second, to set aside a sale, and

instructed them, that·if they believed that the executor of Lucy Johnson recovered the judgment as alleged, and that it was destroyed, "you will find for the plaintiff, and say by your verdict, 'We, the jury, find for plaintiff on the first issue.'" If they believed that Joseph Richardson became the purchaser of the land at a *bona-fide* sale ordered and confirmed by the Probate Court, "you will in that case find for the defendant, Jane Richardson, on the second issue." If they believed the sale was procured by any understanding between Richardson and Stone which was injurious to the estate, or made for the purpose of enabling Stone to become the owner, in whole or in part, of the land, "you will find for the plaintiffs on the second issue," and assess the value of the rents from the date of the sale to the trial. The verdict was, "We, the jury, find for the defendant," and upon that verdict judgment was rendered "that plaintiffs take nothing by their suit, and that defendant go hence without day, and that defendant have and recover of the plaintiffs. all costs in this behalf expended, and that they have their execution for the same."

It is assigned as error that the verdict is not responsive to either issue, and cannot support a judgment. The general verdict for the defendant seems to us sufficiently responsive to the charge to show that the jury found for the defendant, Jane Richardson, on the main issue. The judgment itself is certainly objectionable as not setting out the full names of the parties·for and against whom it is rendered; but there is no assignment of error presenting that objection.

It is objected that the verdict, if intended to be against the plaintiffs, on the first issue, as to the substitution of the judgment, is contrary to the evidence. The evidence that the judgment was recovered and destroyed as alleged, is conclusive and uncontradicted. In the opinion of the writer, that portion of plaintiff's case, whether regarded as a proceeding under the statute to substitute a destroyed judgment, or as a proceeding for that purpose independent of the statute, might properly have been passed on by the court without a jury.

The court, he thinks, might have declined to submit to the jury any issue thereon, and have ordered the judgment substituted, if satisfied of its existence and destruction. (Rev. Stats., art. 4286; Freem. on Judg., secs. 89, 89*a*, and references; Jackson, *ex dem.* Smith, *v.* Hammond, 1 Caines, (Term R.,) 496; Adkinson *v.* Keel, 25 Ala., 551.)

The court, however, did submit the issue to the jury, and they either failed to pass upon it, or found contrary to the evidence. We are inclined to the opinion that the verdict should be construed as passing only on the second and main issue, and that it constituted no basis for a judgment on the issue of substitution.

As already remarked, the judgment does not set out the names of the parties for and against whom it is rendered; but it does not substitute the destroyed judgment, and seems designed to be in favor of all of the defendants for their costs.

The question presented is whether, either on erroneous finding as to the substitution of the destroyed judgment, or an erroneous judgment on that point, a reversal of the cause is required. The estate of Richardson had no interest in or connection with the question of substitution. The plaintiffs had united their application to substitute and their petition to set aside the sale in one proceeding; but this appears to have been done for convenience, the heirs of the estate of Branch being necessary parties to both, and entitled to their costs in both, no matter how decided. The costs of the substitution of the destroyed judgment would have to be paid by the plaintiffs in any event; and the fact that those costs are adjudged against them, constitutes no ground of complaint. The failure to substitute in this case will not preclude further proceedings for that purpose. The judgment, when substituted, is only for the establishment of a claim against an estate, and is not enforcible by execution.

Our conclusion is, that appellants have suffered no injury in the matter of the substitution for which the estate of Richard-

son should be held responsible, and that no error has been committed which entitles them to have the case reversed.

The judgment is accordingly affirmed.

AFFIRMED.

[Opinion delivered February 6, 1880.]