

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*overruled and withdrawn by 0-7424*

Honorable Roger Thurmond
District Attorney
Del Rio, Texas

Overruled Opinions
# 0-119, 0-984, 0-1095

Dear Mr. Thurmond:

Opinion No. 0-2225
Re: Whether it is a violation of
Article 432, Penal Code, the
Nepotism Law, for the City
Council to appoint as City
Attorney an attorney whose
wife is a first cousin by con-
sanguinity to the wife of the
Mayor.

We are in receipt of your letter of April 11, 1940,
requesting the opinion of this department upon the above
stated question, accompanied by a copy of your letter to
the County Judge and Commissioners of Val Verde County on a
similar question. We quote from your letter:

"The City of Del Rio is a Home Rule City,
and under the charter of said City the City
Commission, which is composed of a mayor and
two commissioners, is authorized to appoint a
City Attorney.

"Please advise me at your earliest conven-
ience whether in your opinion it will be a vio-
lation of Article 432, Penal Code, commonly
called the nepotism statute, for the City Coun-
cil to appoint as City Attorney a practicing
attorney whose wife is a first cousin by con-
sanguinity to the wife of the Mayor of the City
of Del Rio."

Articles 432 and 433, Vernon's Annotated Penal Code,
1925, read as follows:

"Art. 432. No officer of this State or any
officer of any district, county, city precinct,
school district, or other municipal subdivision
of this State, or any officer or member of any
State, district, county, city, school district
or other municipal board, or judge of any court,
created by or under authority of any general or

Honorable Roger Thurnmond, Page 2

special law of this State, or any member of the Legislature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree of affinity or within the third degree by consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or voting may be a member, when the salary, fees, or compensation of such appointee is to be paid for, directly or indirectly, out of or from public funds or fees of office of any kind or character whatsoever."

"Art. 433. The inhibitions set forth in this law shall apply to and include the Governor, Lieutenant Governor, Speaker of the House of Representatives, Railroad Commissioners, head of the departments of the State government, judges and members of any and all Boards and courts establishing by or under the authority of any general or special law of this State, members of the Legislature, mayors, commissioners, recorders, aldermen and members of school boards of incorporated cities and towns, public school trustees, officers and members of boards of managers of the State University and of its several branches, and of the various State educational institutions, and of the various State eleemosynary institutions, and of the penitentiaries. This enumeration shall not be held to exclude from the operation and effect of this law any person included within its general provisions."

From these articles it is clear that an attorney may not be appointed City Attorney by the City Commission (composed of two commissioners and the mayor) if he is related to the mayor within the second degree of affinity or the third degree by consanguinity. Does the prohibited degree of relationship exist?

In Tyler Tap Railroad Co. & Douglass vs. Overton, 1 App. Ct. of Appeals, sec. 533, 534, 535, the methods of computing the degrees of consanguinity were stated by the court as follows:

Honorable Roger Thurmond, Page 3

> "In computing the degree of lineal con-
> sanguinity existing between two persons, every
> generation in the direct course of relation-
> ship between the two parties makes a degree,
> and the rule is the same by the civil and
> common law. The mode of computing degrees of
> collateral consanguinity at the common and by
> the canon law is to discover the common an-
> cestor, to begin with him to reckon down-
> wards, and the degree the two persons, or the
> more remote of them, is distant from the an-
> cestor, is the degree of kindred subsisting
> between them. For instance, two brothers
> are related to each other in the first degree
> because from the father each one of them is
> one degree. An uncle and nephew are related
> to each other in the second degree, because
> the nephew is two degrees distant from the
> common ancestor, and the uncle is extended to
> the remotest degree of collateral relationship."

The wife of the mayor and the wife of the attor-
ney whose appointment is anticipated are first cousins, and
first cousins are related by consanguinity in the second
degree. Tyler Tap Railroad Co. vs. Overton, 1 App. C. C.,
Sec. 533; Opinion O-791; see also Duncan vs. State, 103
Cr. R. 293, 280 S. W. 216. However, if the mayor and
the attorney are related in any degree, it is by marriage
or affinity. Degrees of affinity are computed in the same
way as those of consanguinity. That is to say, the re-
lations of the wife stand in the same degree of affinity
to the husband as they are related to the wife by con-
sanguinity. 2 Cor. Jur. Secundum 992; 2 Cor. Jur. 379;
Kelly vs. Neely, 12 Ark. 657, 56 Am. D. 288; Paddock vs.
Wells, 2 Barb. Ch. (N. Y.) 331; 333; Waterhouse vs. Martin,
Peck (Tenn.) 374; 389; Chinn vs. State, 47 Oh. St. 575,
579, 26 N. E. 986, 11 L. R. A. 630; State vs. Hooper,
37 Pac. (2d) 52, 64, 140 Kans. 481. This doctrine is
qualified to the extent that blood relations of the husband
and the blood relations of the wife are not related to each
other by affinity. Respective consanguinei do not become
related by affinity. This is the undoubted weight of
authority and the Texas rule. 2 Cor. Jur. 378 and cases
cited in the notes; State vs. Wall, 41 Fla. 463, 466, 26

So. 1020, 79 Am. St. Rep. 195, 49 L. R. A. 548; Kelly vs. Neely, 12 Ark. 657, 660, 56 Am. D. 288; Johnson vs. Richardson, 52 Tex. 481; Williams vs. Foster, (Civ. App.) 233 S. W. 120; Farmers Natl. Bank vs. Wallace, (Civ. App.) 263 S. W. 1105. The mayor's wife then is related to the attorney in the second degree by affinity. Is the Mayor also so related?

According to the great weight of authority in this country, relationship by affinity does not include persons related to the spouse simply by affinity. The doctrine is expressed in the phrase affinis mei, affinis, non est mihi affinis; or stated in another way, the affines of the wife are not those of the husband, nor are the affines of the husband those of the wife. 2. C. J. 379; 2 C. J. Secundum, 992; Bliss vs. Caille Brothers Co., 149 Mich. 601, 608, 113 N. W. 317, 12 Ann. Cas. 513; Rydras vs. Livingston, 5 Mart. (La.) 292, 295; Waterhouse vs. Martin, Tech. (Tenn.) 374, 389; Chinn vs. State, 47 Ohio St. 575, 26 N. E. 986, 11 L. R. A. 630; Kirby vs. State, 89 Ala. 63, 8 So. 110; Oneal vs. State, 47 Ga. 229; Duepree vs. Duepree, 45 Ga. 415; Tegarden vs. Phillips, 14 Ind. App. 27, 42 N. E. 547; Chase vs. Jennings, 38 Me. 44; Bigelow vs. Sprague, 140 Mass. 425, 5 N. E. 144; Higbe vs. Leonard, 1 Den. (N. Y.) 186; Eggleston vs. Smiley, 17 Johns (N. Y. ) 133; Rank vs. Shewey, 4 Watt (Pa.) 218; Moses vs. State, 11 Hunch. (Tenn.) 232; Rector vs. Drury, 4 Chandl. (Wis.) 24. The rule is said to be based on the proposition that the relation of the husband and the wife is one of affinity. Bliss vs. Caille Bros. Co., 149 Mich. 601, 608, 113 N. W. 317, 12 Ann. Cas. 513; State vs. Wall, 41 Fla. 463, 466, 26 So. 1020, 79 Am. St. Rep. 195, 49 L. R. A. 548.

On the other hand, there is a strong minority view firmly entrenched in the jurisdictions in which it is applied, which, opposed to the majority view is based on the reasoning that the relation between the husband and the wife is not one of affinity, but that they should be regarded in law as one person. Hence, the affines of one spouse are the affines of the other. State vs. Wall, 41 Fla. 463, 466, 26 So. 1020, 79 Am. St. Rep. 195, 49 L. R. A. 548; Kelly vs. Neely, 12 Ark. 657, 56 Am. D. 288; Foot vs. Morton, 1 Hill (N. Y.) 654; Paddock vs. Wells, 2 Barb. Ch. (N. Y.) 331; Cain vs. Ingham, 7 Cow. (N. Y.) 478; Charles vs. John, Y. B. 41 Edw. III 9.

Honorable Roger Thurmond, Page 5

We have discussed the method of determining the prohibitive degrees of relationship under Article 432, Penal Code, the majority and minority views as to whether or not one spouse is related to the affines of the other, and the reasons given in support of these views. What is the rule to be applied in Texas?

In determining the rule in Texas we must be careful to distinguish our cases. We must cast to one side those decisions which specifically hold in accordance with the great weight of authority in this country that blood relations of the husband and blood relations of the wife are not related to each other by affinity as Johnson vs. Richardson, 52 Tex. 481; Williams vs. Foster (Civ. App.) 233 S. W. 120; Farmers National Bank vs. Wallace (Civ. App.), 263 S. W. 1105. Likewise, we must shelve those cases holding that in a suit by one spouse which will enhance or affect community property, the other spouse though not made a formal party is so interested in the outcome of the suit that her relation within the prohibited degree to a judge or juror will disqualify him. Railway vs. Terrell, 69 Tex. 650, 7 S. W. 670; Railway vs. Horne, 69 Tex. 643, 9 S. W. 440. We must confine ourselves to those cases in which the question of whether or not one spouse is related to the affines of the other was raised or passed upon.

The first instance we have discovered in which this question was raised was in the case of Houston & T. C. Ry. Co. vs. Terrell, decided by and the Supreme Court in 1888 (7 S. W. 670). There it appeared that one of the jurors and the plaintiff had married sisters. Judge Gaines found it unnecessary to pass upon the question but called the attention to the minority view when he stated:

"We do not pass upon the question whether the plaintiff and the juror were related by affinity or not. The court held they were not. Seemingly upon good authority, a contrary doctrine was expressly decided by the Supreme Court of New York. Foot vs. Morton, 1 Hill 654. . ."

The next instance in which the question was expressly called to the attention of the Supreme Court was in the following year, 1889. There is an opinion by Mr. Chief Justice Stayton in the case of Schultze vs. McLeary (11 S. W. 924), it appears that on a previous trial the wives

of the district judge and one of the defendants, Orynski, were sisters. Here again the court found it unnecessary to pass upon the question, but in obiter dictum said:

"It is denied that the plaintiff in the action the special judge was appointed to try, was related to the defendant therein, whose wife was the sister of the wife of the district judge, by affinity in any degree; and we have understood that in such cases no relationship of that character existed. It does not follow from this, however, that the judge was not disqualified, and it ought not to be held upon mere conjecture that the certificate of disqualification sent to the Governor was not true. It may be that the judge and Orynski were not related by affinity at all, but if the claim represented by the matter was one in which Orynski was with the representative of his wife who was so related, or if the was a representative of the rights claimed by himself and his wife in community rights, or if any judgment could be rendered in his favor or against him would affect the right of his wife through her community rights, even to the extent of costs, then the wife of Orynski, within the spirit and purpose of the constitutional provisions to which we have referred, was a party to the suit, and the district judge disqualified. . ."

Finally, in an opinion by Mr. Chief Justice Fly speaking for the San Antonio Court of Civil Appeals, in the case of Seabrook, et al vs. First National Bank of Port Lavaca, (C. C. A. 1914) 171 S. W. 247, it was directly held that spouses of first cousins are not related at all by affinity. As authority for this proposition the court cited Schultze vs. McLeary, supra, and the Ohio case of Chinn vs. State, 47 Ohio St. 575, 26 N. E. 986, 11 L. R. A. 630. Apparently, no writ was applied for.

Standing squarely in conflict with the Seabrook case and the dictum of the Supreme Court heretofore set forth is the case of Stringfellow vs. State, decided by the Court of Criminal Appeals in 1901 (61 S. W. 719). There appellant was

Honorable Roger Thurmond, Page 7

convicted of murder in the trial court, and one of his grounds
for motion for new trial was that one of the jurors and the
deceased wives were first cousins.  In discussing the ques-
tion, the court said:

     "One of the grounds of the motion for new
  trial challenges the competency of Hanks, one
  of the jurors who tried the cause.  It is made
  to appear, without contradiction, that Hanks and
  deceased married first cousins; that the wife of
  dedeased died some years prior to the trial,
  leaving two sons as the issue of that marriage.
  These sons were private prosecutors in this case.
  Appeallant was ignorant of these facts until after
  the conviction.  The juror answered on his voir
  dire that he was not related to defendant or de-
  ceased by consanguinity or affinity within the
  prohibited degree.  Except for the issue resul-
  tant of the marriage between deceased and his
  wife, the death of said wife would have termin-
  ated the relationship.  Under the authorities,
  it seems that by reason of the issue the rela-
  tionship is extended beyond the death of the
  spouse.  Under the law, as it is understood in
  this state, Hanks and deceased, by reason of
  their wifes being first cousins, were related
  by affinity.  Page v. State, 22 Tex. App. 557,
  3 S. W. 745; Powers v. State, 27 Tex. App. 700,
  11 S. W. 646.  See, also Foot v. Morgan, 1
  Hill, 654; Dearmond v. Dearmond, 10 Ind. 191;
  Kelly v. Neely, 12 Ark. 657, 56 Am. Dec. 289.
  The contention by the state that the relation-
  ship ceased on the death of the wife of the de-
  ceased would be well taken in the absence of
  issue of the marriage; but as applied to this
  case the insistment is incorrect, because of the
  birth and surviving of the children of the mar-
  riage.  The proposition that the relationship
  exists by reason of the issue is supported by
  the weight of authority.  Jaques v. Commonwealth,
  10 Grat. 690; Bigelow v. Sprageu, 140 Mass. 425,
  5 N. E. 144; 1 Am. & Eng. Enc. Daw (New Ed.) pp.
  912, 913; 17 Am. & Eng. Enc. Law (New Ed.) p. 1125.

Honorable Roser Thurmond, Page 8

> Thus it will be seen that deceased, Monkhouse,
> was related to the juror Hanks within the pro-
> hibited degree. So the juror Hanks was also
> related to George and William Monkhouse, sons
> of the deceased by the first wife. Not only so,
> but they were private prosecutors; and the
> grounds of challenge to the juror Hanks should
> have been sustained, and a new trial should have
> been granted on this account." (Underscoring
> ours)

The case of Kelly vs. Neely, cited with approval
in the Stringfellow case, discusses the reasons for the ma-
jority and minority views heretofore set forth, and concludes
that by marriage a man places himself in the same degree of
propinquity to all the relations of his wife, either by affin-
ity or consanguinity, as she actually stands toward them. By
reason of the citation of approval accorded Kelly vs. Neely
and Foot vs. Morgan, supra, in the Stringfellow case, we are
impelled to the conclusion that the minority view as hereto-
fore set forth and directly followed in Stringfellow vs. State
is the law in Texas -- at least insofar as the Court of
Criminal Appeals is concerned. Moreover, we feel constrained
to adopt the view of the Court of Criminal Appeals in inter-
preting a criminal statute, Article 432, Penal Code.

In passing, we should like to confess that the ques-
tion involved is somewhat subtle and we have not reached our
conclusion herein without difficulty. For some twenty years
or more this Department, in preceding administrations, has
consistently ruled that the majority rule obtained in Texas
(as indeed it does in our civil courts) overlooking the
Stringfellow decision. This administration, in opinions
Nos. C-119, O-784, and O-1095, has heretofore assumed that
the opinions of this Department over that period of years
were correct, likewise overlooking the Stringfellow case.

It is apparent that the conflict between the civil
courts and the criminal on this point must be settled. In
our opinion the Stringfellow case may later be distinguished
on the basis that the remarks concerning the relationship of
the deceased, Monkhouse, was not necessary to the decision,
since, under the majority view, the sons of the deceased wife
of Monkhouse, who were private prosecutors, were related to
the juror Hanks through their mother. However, since the

Honorable Roger Thurmond, Page 9

Court of Criminal Appeals has apparently placed the decision in the Stringfellow case on both grounds, we cannot safely assume that the court will retract the statements made therein with reference to the minority rule. We must therefore advise that, so far as the presently recorded view of the Court of Criminal Appeals is concerned, it will be a violation of Articles 432-435, of the Penal Code of Texas for the City Council of Del Rio to appoint as City Attorney a practicing attorney whose wife is a first cousin by consanguinity to the wife of the mayor of that city.

Opinions Nos. O-119, O-784, and O-1095, heretofore rendered by this department, and all opinions of preceding administrations, insofar as they may conflict herewith, are expressly overruled.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *R W Fairchild*

R. W. Fairchild
Assistant

By *James D. Smullen*

James D. Smullen

JDS:GO

APPROVED JUL 3, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN