## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

INHABITANTS OF BROOKLINE *vs.* JOHN SHERMAN.

Norfolk.  March 5. — June 18, 1885.  W. ALLEN, COLBURN, & HOLMES, JJ., absent.

A town organized a fire department, built an engine-house, in which its engine was kept, and paid the members of the engine company, who were appointed, from time to time, by the fire engineers. A room in the engine-house was fitted up for the use of the enginemen, with furniture bought with a fund raised by a subscription by citizens of the town, by contributions by members of the company and by the town, by prize-money received at a contest with another company, and by an assessment laid upon the members of the company. This furniture was used by each succeeding company in the engine-house from the time it was placed there. Ten years after its purchase, the members of the then existing company removed the furniture from the engine-house and divided it among themselves, pursuant to a vote, and subsequently disbanded. *Held*, that the town could maintain replevin for the furniture.

REPLEVIN of certain personal property. Writ dated April 27, 1882.

The case was referred to an auditor, who found that neither the plaintiff nor the defendant was the owner of the goods replevied; and that the plaintiff was entitled to the possession of said goods at the time they were taken from its possession, and was now entitled to the possession of the same.

Trial in the Superior Court, without a jury, before *Bacon*, J., who allowed a bill of exceptions, in substance as follows:

VOL. XXVI.                    1

The plaintiff put in evidence the report of the auditor; and the following facts were also proved or admitted.

The plaintiff town organized a fire department in 1871, and in the same year erected a new engine-house. In 1871, fire engineers were appointed by the selectmen of the town, and have thus been annually appointed since, and these fire engineers have duly appointed, from time to time, enginemen composing the company, of which on April 21, 1882, the defendant was a member. These enginemen have always been paid by the town. In 1881, the duly appointed engineers of the town appointed the defendant, and the other persons who acted with him in removing from the engine-house of the town the goods replevied, as hereinafter stated, to be enginemen for the year beginning May 1, 1881. From 1871 to the present time, the term during which enginemen have been appointed to serve, subject to discharge by the engineers, has begun on May 1 in each year.

In 1871 this company was called Brookline Engine Company, No. 1, and consisted of forty-five men; but in 1876 the engineers (the town having adopted steam instead of hand engines) discharged twenty men, thus reducing the number to twenty-five, and they afterwards still further reduced the number of enginemen in this company.

Ever since 1871, the town has owned and kept in its engine-house a fire engine. In this building there was provided by the town a room for the use of the enginemen, where they have held their meetings, and which they called their "parlor." They had their own constitution and by-laws, and kept their own records.

The defendant first became a member of the company in July, 1872.

The property replevied constituted the furniture of this room, called the "parlor," on April 21, 1882, when the company at a special meeting passed the following vote: "Voted to remove the company's furniture from the 'parlor' to-night, and that it be divided." In pursuance of this vote, the property replevied was removed from the engine-house the same evening, by the defendant and the other members of the engine company, and taken to the dwelling-house of the defendant, where

a portion of it was discovered by the officers of the town, and replevied.

At the same meeting of April 21, 1882, an informal vote was taken to ascertain how the members stood on disbanding. A majority of seven were in favor of disbanding, and the others "were willing to abide by the voice of the majority." It was then voted to adjourn to April 25.

At the meeting of the company held on April 25, 1882, the record of the last meeting was read and approved, and it was "Voted that we disband, it to take effect at 12 o'clock midnight, April 30, 1882; also, if it is the wish of the board of engineers, we will continue to answer the alarms until another company is appointed to succeed the present company." It was also "Voted that the vote to disband be given to the engineers."

No other meeting of the company was held until May 1, 1882, when the new enginemen appointed to succeed the old company met and organized. It further appeared that the company had been in the habit each year of voting in members, and of sending the lists of their members to the engineers for their approval.

The furniture mentioned in the writ was purchased, in the spring of 1872, by a committee of the enginemen who then constituted the company, from a fund made up as follows: $125 was paid by the town on February 5, 1872, on the recommendation of the engineers, towards furnishing the engine-house; $700 was raised by subscription by the citizens of the town for the purpose of assisting the engine company in fitting up and furnishing their part of the new engine-house, and added to the fund; and the sum of $100 was furnished by the then existing engine company, being prize money received at a contest with another company.

There was also evidence that this fund was further increased by an assessment laid upon the members of the company of that year. All the money raised was put into one fund with the money furnished by the town, and was expended by the committee in the purchase of the furniture. The furniture thus purchased was placed in the room of the engine-house of the town called the "parlor," and was not removed therefrom until said removal on April 21, 1882, except on one occasion, when it was

temporarily removed while the room was being painted, and immediately afterwards returned to said room. It has been used by each succeeding company in said engine-house since it was first bought and placed therein.

There was evidence tending to show that the town exercised no control over the furniture except through its enginemen, the members of the company, and did not claim it as its property.

On the foregoing evidence, the defendant contended, and asked the judge to rule, that the company was a voluntary association; that the property replevied belonged to himself and the other persons who constituted the company on April 21, 1882; and that they had the right, having voted to disband, to remove the property and divide it among themselves.

The judge declined so to rule; and ruled that the company was not a voluntary association, inasmuch as the members, though elected by the company, were subject to approval by the engineers of the town, and were paid by the town; that the company had no right to remove and divide the property; that, when the company dissolved, the property went to the town in trust; and that the town was entitled to recover; and ordered judgment accordingly. The defendant alleged exceptions.

*A. O. Brewster*, for the defendant.

*C. A. Williams*, for the plaintiff.

C. ALLEN, J. The defendant has no valid ground of exception to any of the rulings made at the trial. The enginemen were a fluctuating and temporary body, and did not constitute a corporation, and were not endowed with legal succession. They did not own the property provided for the use of the company. They could not sell it for the purpose of dividing the proceeds among themselves, nor could they distribute the property itself among themselves. The town provided the engine and engine-house, and paid the enginemen. The property in controversy was for the use of such persons as should be members of the engine company for the time being. It could not have been contemplated that each member, upon withdrawing from time to time from the company, should be entitled to assert a private ownership to a share of the furniture. This would defeat the very object for which it was provided. Whoever gave money for this purpose, whether members of the company or citizens at

large, must have given it with the understanding that the furniture should remain in the room, and that it should be appropriated for the use and benefit of the company as it might be constituted from time to time. The purpose was to aid and improve the efficiency of the organization, by furnishing a convenient and attractive room for its use as a body, and not by making a gift of property to the individuals who composed the company at that or any other particular time, which they might distribute among themselves, or sell for their individual emolument. It is more reasonable to consider that the title to the furniture was vested in the town, which owned the building and the engines, and which paid the enginemen and the general expenses of maintaining the fire department. Whatever was given, was given in law to the town, for the purposes named. It is unnecessary here to consider whether the town took it on a trust which could be enforced. Whether it did or not, it would be equally entitled to recover. But the legal title must be somewhere. It is not in the individuals who compose the company. The company has no corporate existence. And, on the facts stated, we are satisfied that the legal title is in the town.

In *Perry* v. *Stowe*, 111 Mass. 60, no support is found for the claim of the defendant. The town was not a party to the suit, but the action was brought by the enginemen who stayed in the company against a person who bought the furniture from those who withdrew; and it was held that the former could maintain replevin for the furniture. The circumstances were quite similar to those in the present case, though not identical in all respects. The remark in the opinion of the court, that the furniture " was the property of the engine company," means that the engine company, that is, the remaining members of it, had property enough in the furniture to entitle them to maintain replevin against the withdrawing members. It does not mean that the company had an absolute title as against the town. No such question was under consideration.

*Exceptions overruled.*