## HORACE H. BIGELOW *vs.* AUGUSTUS B. R. SPRAGUE.

Worcester. Oct. 30, 1885. — Jan. 6, 1886. FIELD & C. ALLEN, JJ.,
absent.

At the trial of an action for publishing a libel, the plaintiff introduced evidence
tending to show that the defendant was concerned as a principal in printing
and distributing a large number of copies of a libellous pamphlet. The jury
were instructed, that all of the distinct publications, if any, or if more than
one, which they should find to have been made by the defendant, were to be
treated by them as substantiating the allegation of a publication in the decla
ration ; and that all publications that they should find to have been made by
the defendant before the writ were to be treated by them as a publication upon
which the plaintiff could recover. *Held,* that the defendant had no ground of
exception.

At the trial of an action for publishing a libel contained in a pamphlet, an
exception cannot be sustained to the admission of testimony as to a certain
speech at a meeting at which the defendant presided, if it does not appear what
was said, or that it did not tend to show the defendant's connection with the
publication of the pamphlet.

At the trial of an action for publishing a libel contained in a pamphlet, if there
was evidence from which it could be inferred that the defendant was concerned
in the publication at a certain picnic, and the evidence was admitted only on
condition that the defendant's connection with the distribution was shown, an
exception cannot be sustained to the admission of evidence that a witness saw
the pamphlets in question at the picnic.

A bill of exceptions as tendered, in an action for publishing a libellous pamphlet,
stated that a witness for the plaintiff was allowed to testify that he received a
pamphlet, but did not read it, and threw it away, and omitted to state that the
witness received it of the defendant, and identified it as the one which the de-
fendant was charged with publishing. *Held,* that the exception was rightly
disallowed.

During the trial of an action, it appeared that an uncle of the plaintiff married an
aunt of a juror, and that two uncles of the juror married aunts of the plaintiff.
The judge ruled that the juror was not related to the plaintiff. *Held,* that the
ruling was right.

A bill of exceptions as tendered stated that, during the trial of the action, the de-
fendant excepted to the refusal of the judge to order that a juror be withdrawn
from the panel on account of his relationship to the plaintiff, it appearing that
an uncle of the plaintiff married an aunt of the juror, and that two uncles of
the juror married aunts of the plaintiff ; but omitted to state that each of these
marriages had been dissolved by the death of one of the parties, and that it did
not appear that there were issue of any of them living. *Held,* that the excep-
tion was rightly disallowed.

At the trial of an action for publishing a libel, a bill of exceptions tendered by the
defendant alleged that the judge excluded certain evidence " on the ground that
verbal slander would not be sufficient provocation to justify or mitigate a libel."
The judge, in fact, admitted evidence of a libel published by the plaintiff, and
stated that " a reiteration of the libel, or to say that you can refer to such a

paper, is not in itself a libel. If he says that you can find in such and such a newspaper such and such an article which I refer you to, I don't think that that is a publication of the libel in the sense that that may be a provocation." *Held,* that the exception was rightly disallowed.

PETITION to establish the truth of exceptions alleged by Horace H. Bigelow in an action brought against him by Augustus B. R. Sprague for publishing in a pamphlet a libel concerning said Sprague, which exceptions were disallowed by *Barker,* J., who presided at the trial in the Superior Court.

The petition was referred by this court to a commissioner, to hear the parties and report his findings. So much of the commissioner's report as is material to the points decided appears in the opinion.

*B. F. Butler & W. B. Gale,* (*J. A. Titus* with them,) for the petitioner.

*W. S. B. Hopkins & F. P. Goulding,* for the respondent.

HOLMES, J. 1. Sprague had introduced evidence tending to show that Bigelow was concerned as a principal in printing and distributing a large number of copies of a libellous pamphlet; and the jury were instructed that all of the distinct publications, if any, or if more than one, which they should find to have been made by Bigelow, were to be treated by them as substantiating the allegation of a publication in the declaration; that all publications that they should find to have been made by Bigelow before the writ were to be treated by them as a publication upon which Sprague could recover. The words " distinct publications " referred to the several deliveries of copies of the pamphlet. We assume, without deciding, that Bigelow has proved his exception to this ruling, and is entitled to have it considered. The judge also refused to order Sprague to elect which act of publication he would rely on as the cause of action, but to this refusal no exception appears to have been taken.

Bigelow's argument goes on the assumption that the delivery of some one copy of the pamphlet constitutes the cause of action, and that the delivery of others stands like the repetition of an oral slander, which, it is said, is admissible to prove deliberation and malice, but for no other purpose. It is said too, still on the same assumption, that the result of the ruling of the court below is to leave Bigelow in the clouds, not knowing which publication

he is called on to meet, or which has been found against him, or what the scope of the judgment is, if Sprague prevails.

If we confine ourselves strictly to what is open on the exception taken, the only question is whether the court was right in allowing the jury to give damages for the delivery of different copies of the pamphlet to different persons. For the instruction in the charge which is excepted to cannot have affected the conduct of the cause or the arguments, and, whichever was the technically correct view, it did not matter to Bigelow at that stage whether the jury were told that, if they found more than one delivery by Bigelow proved, they should regard one as the cause of action and consider the others as enhancing the damages, or that they might regard all the several deliveries as constituting one publication and one cause of action.

On this question of damages, we are not aware that it has ever been doubted that, when the libel is printed in an edition of many copies for general circulation, the extent of the circulation procured or caused by the publisher may be shown against him as evidence of the injury to the person libelled. *Gathercole* v. *Miall*, 15 M. & W. 319. *Fry* v. *Bennett*, 28 N. Y. 324, 330; *S. C.* 3 Bosw. 200, 234; 4 Duer, 247, 255. This rule disposes of the exception, and shows that the supposed analogy to repetitions fails. For, when a repetition not constituting the cause of action is admitted, as is commonly said, to prove malice, (*Hastings* v. *Stetson*, 130 Mass. 76,) the jury are instructed not to give damages for it. *Bodwell* v. *Swan*, 3 Pick. 376, 378. *Pearson* v. *Lemaitre*, 5 M. & Gr. 700. *Swift* v. *Dickerman*, 31 Conn. 285, 290. And if we are to go a step further than is strictly necessary, it seems to follow from the cases first cited, and from *Commonwealth* v. *Blanding*, 3 Pick. 304, 311, that the court below was technically correct in ruling that all the several deliveries made by Bigelow were to be treated as substantiating the allegation of a publication. For the effect of *Commonwealth* v. *Blanding* seems to be that all the distinct publications of copies of a newspaper which the jury might find to have been made in a certain county, from evidence that the number of the paper was received and circulated there, sustained the allegation of the indictment.

Our conclusion derives some further support from the doctrine that a publication in a newspaper may be unauthorized,

when some less widespread publication would be protected. *Brown* v. *Croome*, 2 Stark. 297, 299, 301. *Laughton* v. *Bishop of Sodor and Man*, L. R. 4 P. C. 495, 504. For if each delivery of a copy is to be dealt with only, and for all purposes, as a separate publication, courts could not distinguish between publication in a newspaper and in a private letter. A closer analogy than that suggested by the counsel for Bigelow would seem to be that of an oral slander addressed to a crowd. But whether the publication of the edition is to be regarded technically as, so to speak, one composite act, we need not consider.

2. Supposing that the exception to the testimony of one Martin as to a speech of one Wardwell at a meeting can be considered, notwithstanding the failure of the bill of exceptions as tendered to state that Bigelow presided, or that the evidence was confined to what was said in Bigelow's presence, ( *Glidden* v. *Child*, 122 Mass. 433, *Arvilla* v. *Spaulding*, 121 Mass. 505, 508,) it does not appear what was said, (*Pennock* v. *McCormick*, 120 Mass. 275,) or that it did not tend to show Bigelow's connection with the publication of the pamphlet.

Supposing that similar objections do not apply to the exception to the testimony of one Griffin, that he saw the pamphlets in question at a picnic where Bigelow introduced Wardwell, there was evidence in the course of the trial from which it could fairly be inferred that Bigelow was concerned in the publication of them. The evidence was admitted only on condition that Bigelow's connection with the distribution was shown.

The bill of exceptions as tendered states that Bigelow excepted to the admission of the testimony of one Woods, who testified that he received a pamphlet, but did not read it, and so could not tell what was in it, and threw it away. This exception was properly disallowed, as it omits to state the facts found by the commissioner, that he received the pamphlet from the defendant and identified it as the one which Bigelow was charged with publishing. *Glidden* v. *Child* and *Arvilla* v. *Spaulding, ubi supra.*

3. During the trial Bigelow moved that a juror should be withdrawn from the panel on account of his relationship to Sprague.

It appeared that an uncle of Sprague married an aunt of the juror, and that two uncles of the juror married aunts of Sprague,

but that each of these marriages had been dissolved by the death of one of the parties, and it did not appear that there was issue of any of them living. The court rightly ruled that the juror was not related to Sprague. No absolute disqualification ever existed. *Chase* v. *Jennings*, 38 Maine, 44. *Rank* v. *Shewey*, 4 Watts, 218. *Johnson* v. *Richardson*, 52 Texas, 481. Co. Lit. 157 a. And, by the weight of authority, if it had existed, it had come to an end. Y. B. 14 Hen. VII. 2, pl. 6. Finch's Law, 9. *State* v. *Shaw*, 3 Ired. 532, 534. *Cain* v. *Ingham*, 7 Cowen, 478. *Carman* v. *Newell*, 1 Denio, 25. See *Paddock* v. *Wells*, 2 Barb. Ch. 331, 333; *Vannoy* v. *Givens*, 3 Zabr. 201, 202. Although we have preferred to deal with this question on its merits, as it has a semblance of importance, the exception alleged in the bill did not set forth the fact that the marriages had been dissolved by death, and was properly disallowed.

4. Bigelow's exception to the exclusion of what Wardwell, who wrote the pamphlet in question, heard of Sprague's doing in the way of provocation, was rightly disallowed. It alleged that the court " excluded the evidence on the ground that verbal slander would not be sufficient provocation to justify or mitigate a libel." In fact, the court did not exclude evidence of a libel actually published by Sprague, but stated that " a reiteration of the libel, or to say that you can refer to such a paper, is not in itself a libel. If he says that you can find in such and such a newspaper such and such an article which I refer you to, I do not think that that is a publication of the libel in the sense that that may be a provocation." It is plain that the " reiteration " supposed means the same thing as the last sentence, in different words, and a very different thing from that alleged in the bill of exceptions. Whether a provocation to Wardwell was disclosed, or, if disclosed, could justify Bigelow, we need not consider.

We believe that we have disposed of all the questions raised in the argument of Bigelow's counsel upon the exceptions. We have examined the great number of others raised, or sought to be raised, by the bill, but find nothing in them which calls for special remark, or which can be sustained as proved and valid.

*Exceptions overruled.*