## BROTHERHOOD OF LOCOMOTIVE FIRE-MEN AND ENGINEMEN v. HOGAN et al.

### No. 2712.

District Court, D. Minnesota, Third Division. Jan. 25, 1934.

Smith & Coughlin, of Faribault, Minn., for defendants Mayme Hogan and James P. Kennedy.

Elliott, Coursolle & Kelly, of Minneapolis, Minn., and Padden & Moriarty, of Seattle, Wash., for defendants Leo Mondt, James G. Mondt, Lloyd Mondt, and Pearl Mondt Hardwick.

NORDBYE, District Judge.

This matter came before the court on the pleadings and stipulated facts. The issues presented involve the respective claims of these defendants to a certain insurance fund paid into court.

The Brotherhood of Locomotive Firemen and Enginemen, a citizen and resident of the state of Ohio, filed its bill of interpleader in this court. The defendant Mayme Hogan resides in Hayward, Wis. James P. Kennedy resides in Faribault, Minn. The other defendants all reside in Seattle, Wash. Plaintiff is a fraternal beneficiary society, which on January 1, 1907, issued and delivered to one John W. Kennedy, of Seattle, Wash., its beneficiary certificate No. A–21018, whereby it promised to pay to the designated beneficiary of the insured, or to his next of kin, in designated classes, the sum of $1,500, less funeral expenses in the sum of $225 when guaranteed by the local lodge. The beneficiary designated in the certificate when it was issued was Mrs. Mary Kennedy, whose relation to insured was that of wife. The date of their marriage does not appear, but the record does disclose that Mary Kennedy had been married before and had four children by her former marriage. These four children are the defendants Leo Mondt, James G. Mondt, Lloyd Mondt, and Pearl Mondt Hardwick. The relationship of stepchildren and stepfather came into existence between these defendants and the insured by reason of the marriage of Mary Kennedy and John W. Kennedy. No children were born as the result of this latter marriage. On March 16, 1907, some two and one-half months after the policy was issued, Mary Kennedy divorced her husband, John W. Kennedy. The record is silent as to the then whereabouts or disposition of the stepchildren. Whether the said children ever lived in the family with John W. Kennedy does not appear, nor is the court informed as to the ages of these stepchildren. Subsequent to the divorce from John W. Kennedy, Mary Kennedy married one Bert Benson, and, as far as the record indicates, was the wife of Bert Benson when she predeceased John W. Kennedy. The date of the marriage, however, between Mary Kennedy and Bert Benson does not appear. Mary Kennedy Benson died on December 28, 1931. John W. Kennedy died on October 17, 1932. The beneficiary in the policy designated as Mary Kennedy was never changed. At the time of his death, Kennedy was unmarried and had no natural children. His father and mother were dead, and the only kin by blood surviving him are the defendants Mayme Hogan and James P. Kennedy, sister and brother, respectively. All these defendants claim the proceeds of the beneficiary certificate is-

sued to John W. Kennedy as next of kin under the constitution of the Brotherhood of Locomotive Firemen and Enginemen. On petition of the plaintiff, the proceeds of the policy, less expenses and attorneys' fees, were paid into court, and the defendants were required to interplead and set up their respective claims to this fund. Answers in interpleader were filed, and the matter was submitted to the court upon the bill of interpleader and a stipulation which covered article 8 of the constitution of the brotherhood. The section of the constitution covered by the stipulation reads as follows:

## "Article 8

## "Beneficiary and Disability Benefit Departments

### "Beneficiary.

### "Who May Participate

"Sec. 1. (a) The Grand Lodge shall establish and maintain a department to be known as the Beneficiary Department of the Brotherhood of Locomotive Firemen and Enginemen.

"(b) All members who are eligible shall be required to participate in the Beneficiary Department, for the purpose of providing an insurance to be paid, (1) upon the death of a member to one or more of the prescribed beneficiaries, or (2) to the member who sustains a loss or who reaches the age of seventy (70) years as set forth in Section 14, this Article.

"(c) A member may designate as his beneficiary or beneficiaries one or more persons of the following class, and no other, viz: wife, child or children, mother, father, sisters, brothers, blood relations, or persons dependent upon him for support, and in the event that a member has no wife or children living, he may then designate as a beneficiary a charitable institution, or he may designate that the amount of his beneficiary certificate be used for his own funeral expenses. A sick benefit department of a subordinate lodge is not a legal beneficiary.

"(d) If the beneficiary is a minor the fund must be paid to the duly appointed guardian, but should there be no legally designated beneficiary, then the fund shall be paid, subject to the provisions of this Constitution bearing thereon, as follows, in the order named:

"First: to the widow; second, to the child or children; third, to the mother; fourth, to the father; fifth, sisters and brothers equally.

"(e) Should there be none of the last named class of persons living and there is no beneficiary named in the certificate who is entitled to the amount thereof, the proceeds shall belong, and revert, to the beneficiary Fund, provided that when a lodge guarantees funeral expenses, the amount guaranteed by the lodge up to $225.00, shall be paid to the financial secretary of said lodge, and provided further, the General Secretary and Treasurer is authorized to pay reasonable funeral expenses from the proceeds of the certificate.

"(f) The designation of any person or persons in the certificate by a member as his beneficiary or beneficiaries, shall not in any way constitute a contract between this organization and said person or persons, neither shall such designation give any person who may be so designated any legal, equitable or vested right or interest to such certificate or to the proceeds thereof, but according to the provisions of the Constitution, funeral expenses to reimburse a subordinate lodge for such amount as it may expend in the burial of a member not in excess of $225 may be deducted from the amount due on the certificate.

"(g) The term of child or children shall include stepchildren and legally adopted children. The term father and mother shall include stepfather and stepmother, fosterfather and fostermother when dependent, and the term brothers and sisters shall include halfbrothers and halfsisters, but shall not include stepbrothers or stepsisters."

### "Change of Beneficiary

"Sec. 11. (a) A member desiring to change his beneficiary, shall make such change in writing on the form printed on the back of the beneficiary certificate, and such change can be made without the consent of the beneficiary. Said certificate must be forwarded to the General Secretary and Treasurer by the member.

"(b) Beneficiaries shall not have, nor shall they acquire a legal, equitable or vested interest in, or to said certificate, or the proceeds thereof, so as to prevent any member from changing his beneficiary."

It will be noted the constitution provides that, in the event there is no legally designated beneficiary, the fund shall be paid: First, to the widow; second, to the child or children; third, to the mother; fourth, to the father; and, fifth, sisters and brothers, equally. The constitution further provides that "the term of child or children shall include stepchildren and legally adopted children." If the children of Mary Kennedy were stepchildren of John W. Kennedy at the time of his death, regardless of the divorce between the parties,

and the subsequent marriage of their mother, then it would seem that such defendants are entitled to the proceeds of the certificate, otherwise the brother and sister, according to the constitution, are the beneficiaries.

Webster's New International Dictionary defines "stepchild" as follows: "A child of one's wife or husband by a former marriage." "Step" is defined to be a prefix denoting relationship through marriage only of a parent, and not by blood.

The relationship between John W. Kennedy and Mary Kennedy's children that came into being by reason of this marriage became one of affinity, as distinguished from consanguinity. The term in the policy "child or children" denotes the relationship, and the age of the child does not in any way affect the right to participate in this fund. It may be assumed that on this record, if the marriage relationship between the Kennedys had not been dissolved, the stepchildren of the insured would, under the constitution, be entitled to the benefits of the insurance. The question presented to the court, however, is whether or not the relationship of stepfather and stepchildren was extinguished by the subsequent decree of divorce which absolutely dissolved the marriage relationship which gave rise to the kinship of affinity.

No reference is made, nor is there any evidence furnished, as to any statute of the state of Ohio, the residence of the plaintiff, nor of the state of Illinois, where plaintiff apparently was domiciled when this policy was issued. Nor is there any other reference made to the by-laws or constitution of the plaintiff, except as hereinbefore stated.

It may be gathered, however, that the Brotherhood of Locomotive Firemen and Enginemen has established a beneficiary department for the purpose of providing protection by way of insurance for its members. It will be noted that the beneficiaries are limited to the wife, child or children, mother, father, sister, brother, blood relations, or persons dependent upon the insured for support. The divorce between the Kennedys was granted some twenty-five years before Kennedy's death. The right to participate as beneficiaries in this policy must be determined by the relationship that existed between these defendants and the insured at the time of the insured's death. John W. Kennedy was no longer the husband of the mother of the Mondt children when he passed away. It cannot be said that these children at the time of Kennedy's death were the offspring of Kennedy's wife, because, at that time, Kennedy had no wife, and the mother of these children was already married to another. A new relationship by affinity was created by the subsequent marriage of Mrs. Kennedy to Benson, and a new stepfather for these children came into being. The existence of two stepfathers living at the same time is indeed an anomalous relationship. While there is no showing as to the whereabouts of the children after 1907, one will not assume that twenty-five years after the divorce which was obtained by their mother, and with the intervening marriage to Benson, these children remained a part of the insured's family, and occupied a relationship with him of father and children. It may not be at all important in the determination of this case to consider the relationship that may have existed between these children and their erstwhile stepfather, but at least no presumption will arise that they continued as members of his household. It must be clear that, as used in the policy, the term "stepchild" contemplated the filial relationship that is so commonly observed between stepfather and stepchild. The purpose of the brotherhood was to provide insurance benefits for those who were blood relatives, or those who were dependent on the insured for support. No other relationship by affinity was included in the constitution but that of stepchild, except where the relative by affinity was dependent upon the insured. The consideration of the purposes of the organization and the beneficiaries permitted to participate in the proceeds of the policy is in no way conclusive, but becomes important in so far as it may aid the court in determining the interpretation that should be applied to the term "stepchild," as used in the policy.

2 Corpus Juris, 379, states: "Death of the spouse terminates the relationship by affinity; if, however, the marriage has resulted in issue who are still living, the relationship by affinity continues."

The reason for continuing the relationship by affinity in the event children are born is readily apparent. In that event, the stepchildren would have half-sisters or half-brothers as the result of the marriage. There were, however, no children born to the Kennedy marriage. It may be that the exception noted in Corpus Juris has arisen largely in the interpretation of incest statutes, and in proceedings where the qualifications of a judge or juror to participate in certain litigation were questioned on account of alleged relationship by affinity to the interested litigants.

The status of relationship by affinity after dissolution of the marriage has received

consideration in numerous cases. The majority, however, involve incest or the qualifications of judges or jurors where disqualification is urged on account of an alleged relationship by affinity. There has been a striking absence of any extended discussion or reasoning to support the apparently contrary views expressed by the courts.

In Morey et al. v. Monk, 145 Ala. 301, 40 So. 411, decided February 6, 1906, it appeared that one Major R. R. Morey married Mrs. A. J. Monk, a widow, who at the time of her marriage had three children. One of them was W. S. Monk. Major Morey was a member of a mutual benefit society incorporated under the laws of Massachusetts, and had a benefit certificate upon his life issued payable to his wife. Mrs. Morey died, and the insured made application to change the payee from his wife to W. S. Monk, stepson. Upon Major Morey's death, a dispute arose between the brothers and sisters of the insured and the stepson as to the rights to the insurance fund; the money was paid to one Mallory, and the respective claimants made their claims to this fund. The brothers and sisters of the deceased contended that they were entitled to this fund on the ground that they were the nearest of kin and heirs of the insured, and that the payee, Monk, was not in the class provided for by the statute or by-laws of the order. The classes provided for by the constitution and by-laws of the order were "husband or wife, child, affianced husband, affianced wife, relatives or persons dependent upon the applicant, whom it is desired to make beneficiary."

The policy further provided: "In the event of the death of all the beneficiaries selected by the member, before the decease of such member, if no other or further disposition thereof be made in accordance with the provisions of the by-laws, the benefit shall be paid to the widow. If none, then the heirs of the deceased member, and if no person or persons shall be entitled to receive the benefit, it shall revert to the benefit fund."

Monk contended that he was a relative, and consequently was entitled to be named as a beneficiary under the constitution and by-laws of the order. In discussing this matter, the court stated (page 305 of 145 Ala., 40 So. 411, 412): "Although the defendant was the stepson of Maj. Morey, the affinity was dissolved by the death of his mother, which was prior to the changing of the policy in his favor, as his mother left no children by Maj. Morey to continue the affinity existing prior to her death"—citing Tagert v. State, 143 Ala. 88, 39 So. 293, 111 Am. St. Rep. 17; Pegues v. Baker, 110 Ala. 251, 17 So. 943; Mounson v. Mounson, 1 Leonard, 88; Dearmond v. Dearmond, 10 Ind. 191; Bigelow v. Sprague (1886) 140 Mass. 425, 5 N. E. 144.

It should be noted that Monk was permitted to recover in this case, but on the grounds that a certain statute of Massachusetts, which was passed some six weeks before the death of the insured, extended the class of beneficiaries so as to include the defendant. It seems that this law simply authorized the substitution of persons not previously eligible in case of the death of the first-named beneficiary, "with the consent of the officers and under the rules as they may prescribe." The court held that, although it did not appear that the benefit association had formally adopted rules extending the class of beneficiaries allowed, nevertheless, under the circumstances, Monk was entitled to the proceeds of the policy. However, the case is authority for the proposition that Monk was not a relative so as to permit him to become the beneficiary under the constitution and by-laws as they existed prior to the passing of the statute of the state of Massachusetts.

In Bigelow v. Sprague, supra, it appeared the plaintiff moved that a juror should be disqualified because of his relation to the defendant. An uncle of the defendant married an aunt of the juror, and two uncles of the juror married aunts of the defendant Sprague. However, it further appeared that each of these marriages had been dissolved by the death of one of the parties, and it did not appear that there was any issue of any one of them living. In upholding the denial of the motion that the juror should be disqualified, the court stated (page 429 of 140 Mass., 5 N. E. 144, 146): "The court rightly ruled that the juror was not related to Sprague. No absolute disqualification ever existed, * * * and, by the weight of authority, if it had existed, it had come to an end."

In Cain v. Ingham (1827) 7 Cow. (N. Y.) 478, the question as to the qualification of a juror was also being considered. There was a deficiency of jurors, and the sheriff summoned one Clapsaddle, whose father had married the widow of the defendant's brother. Clapsaddle's father died before the trial, and his widow, also the widow of the defendant's brother, lived in the house with Clapsaddle. The following statement is found in the syllabus: "That a juror's father had married the defendant's brother's widow, the father

being dead at the time of the trial, is no ground for principal challenge by the plaintiff." In a per curiam opinion, the court stated: "There was no kindred or subsisting affinity between the defendant and the talesman, which could operate as a principal cause of challenge."

In Carman v. Newell (1845) 1 Denio (N. Y.) 25, the disqualification of a justice of peace was being considered, he having heard certain litigation wherein it was contended he should not have presided by reason of his relationship by affinity to the plaintiff. Plaintiff's brother had married the widow of a deceased brother of the justice. She was, however, deceased at the time of the trial. In refusing to disqualify the justice, the court stated (page 26 of 1 Denio): "The affinity which is a ground of principal challenge to the array, must be a subsisting affinity at the time of the challenge. In this case the widow of the justice's brother, who became the wife of the plaintiff's brother, was proved to be dead, and there was no evidence that there was issue of the marriage. It has been adjudged, that 'It is no principal cause of challenge to a juror that he hath married the party's mother, if she be dead without issue,' for 'the cause ceasing, the effect doth likewise cease.'"

In Blodget v. Brinsmaid (1837) 9 Vt. 27, the matter before the court was an action in ejectment. Defendant was a creditor of one Collard, deceased, and also was the administrator of Collard's estate. He contended that one Hickok, one of the men appointed by a justice of peace to appraise the land, was disqualified because the appraiser had married a sister of the decedent. However, it further appeared that she died long before the transaction in question. The court stated on page 30 of 9 Vt.: "The relationship, by consanguinity, is, in its nature, incapable of dissolution, but the relationship, by affinity, ceases with the dissolution of the marriage, which produced it. Therefore, though a man is, by affinity, brother to his wife's sister, yet, upon the death of his wife, he may lawfully marry her sister."

In Goodall v. Thurman (1858) 1 Head (Tenn.) 209, the following language is found in the syllabus: "A relationship by affinity is dissolved by the death of the party, by a marriage with whom, the relationship was created. Hence, a juror whose wife is dead is competent, although by his marriage he was related to one of the parties to the suit within the prohibited degree."

In Stringfellow v. State (1901) 42 Tex. Cr. R. 588, 61 S. W. 719, the defendant was convicted of murder. The question arose as to the disqualification of a juror. The juror and the deceased had married first cousins. The wife of the deceased had died some years prior to the trial, leaving two sons as issue of that marriage. In disposing of the question of the qualification of the juror, the court stated (page 721 of 61 S. W., 42 Tex. Cr. R. 588): "Except for the issue resultant of the marriage between deceased and his wife, the death of said wife would have terminated the relationship. Under the authorities, it seems that by reason of the issue the relationship is extended beyond the death of the spouse. * * * The contention by the state that the relationship ceased on the death of the wife of the deceased would be well taken in the absence of issue of the marriage."

See, also, Kelly v. Neely, 12 Ark. 657, 659, 56 Am. Dec. 288; Chase v. Jennings, 38 Me. 44, 45; Foot v. Morgan, 1 Hill (N. Y.) 654; State v. Shaw, 25 N. C. 532; State v. Brown, 47 Ohio St. 102, 23 N. E. 747, 21 Am. St. Rep. 790; Noble v. State, 22 Ohio St. 541; Wilson v. State, 100 Tenn. 596, 46 S. W. 451, 66 Am. St. Rep. 789; Johnson v. State, 20 Tex. App. 609, 54 Am. Rep. 535; Jaques v. Commonwealth, 10 Grat. (51 Va.) 690; Paddock v. Wells (1847) 2 Barb. Ch. (N. Y.) 331.

The children of the former Mrs. Kennedy rely principally upon Anderson v. Royal League (1915) 130 Minn. 416, 153 N. W. 853, L. R. A. 1916B, 901, Ann. Cas. 1917C, 691; McGaughey v. Grand Lodge of A. O. U. W. (1921) 148 Minn. 136, 180 N. W. 1001; and Simcoke v. Grand Lodge A. O. U. W. (1892) 84 Iowa, 383, 51 N. W. 8, 15 L. R. A. 114.

In Anderson v. Royal League, supra, it appears that, when plaintiff was six years old, her mother, a widow, married one Robert Whidden, and one older and one younger sister, with the plaintiff, became members of Whidden's household. These stepdaughters were supported and educated by the stepfather in the same way as if they had been his natural children. They regarded him as their father. Plaintiff went by his name prior to her marriage. Whidden took out insurance in the defendant company, making his wife the beneficiary. She died shortly thereafter. Later, Whidden moved to the plaintiff's home and made his home there until his death. During the period he was at plaintiff's home, he changed the beneficiary in the policy so as to read: "Jessie Isadore Anderson, stepdaughter, dependent." The organizer and agent of the defendant assisted in making the change of beneficiary and knew of the relationship that existed between the insured and

the plaintiff. It appears that Whidden never paid board while staying with the plaintiff, but he purchased groceries and defrayed other expenses, and during the last three years of his life he contributed some $600 to the plaintiff. It was assumed for the purpose of the decision that the statutes of Illinois, the place of the incorporation of the defendant, applied. This statute provided: "Payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife of, or to persons dependent upon, the member." Laws Ill. 1893, p. 130, § 1.

The by-law of the defendant provided: "A benefit certificate may be made payable only to one or more persons bearing the relationship to the member of wife, child, adopted child, father, mother, adopting parent, brother, sister, affianced wife, uncle, aunt, niece, nephew, grandparent or grandchild, in which class of beneficiaries no proof of dependency shall be required."

The court stated on page 419 of 130 Minn., 153 N. W. 853, 854: "We think the evidence conclusive that at Whidden's death he and plaintiff were members of one family in the restricted sense of being related by affinity, having the same home, and constituting one household to the support of which he considered himself obligated." And on page 420 of 130 Minn., 153 N. W. 853, 854: "The term 'family,' as used in statutes or charters relating to who may become beneficiaries in associations like defendant, is not to receive a restrictive construction. It may include stepchildren."

The court discussed the variance between the statutes of Illinois and the by-laws, and held that, while the by-law could not be broader than the statute, it could restrict the same. The court stated (page 420 of 130 Minn., 153 N. W. 853, 854): "We do not think it intended as restrictive, but rather as descriptive of those of the 'family' who might be named beneficiaries of a member. The by-law provides that an adopted child may be such. This by-law should receive a liberal construction, so as to aid the benevolent purposes for which defendant exists."

Further, the court held that, if the by-law was more restrictive than the statute, then the by-law was waived if it was intended to exclude such as the plaintiff. The court based this conclusion upon the fact that the defendant collected and retained the premiums, with full knowledge of the facts, for more than four years. It is true that, in this opinion,

the plaintiff was referred to as the stepdaughter of the insured after the death of the mother, but the decision itself was not based upon the ground that the plaintiff was the stepdaughter of the insured. It is clear that the court was moved to find for the plaintiff because it indisputably appeared that she was a member of Whidden's family, and was considered by the insured as his daughter, and was designated in the policy as a dependent. No consideration was given by the court to the continuance of the relationship of affinity after the dissolution of the marriage, by death or otherwise. The court was amply justified in determining that, within the purview of the Illinois law, the plaintiff was a member of the insured's family.

In McGaughey v. Grand Lodge, supra, the facts are as follows: The defendant issued in 1899 a benefit certificate to Hugh F. Mc-Gaughey. The father of the insured was named as beneficiary. In 1892, the insured's father had married the plaintiff, and the insured, his father, and his stepmother, resided together until September, 1908, when the father died. The son continued to make his home with his stepmother, and largely supported her and the home until his death. The named beneficiary in the policy, however, was never changed. Under the constitution of the defendant, a stepmother may be named as a beneficiary. The constitution further provides that, if the named beneficiary predeceases the insured, the benefits of the policy shall be paid to certain classes of designated beneficiaries commencing with mother, child, etc. The constitution of the defendant prior to 1913 stated the purpose of the beneficiary fund to be "for the protection only of those persons who are members of the family of its respective members or who are related to them respectively within certain degree by blood. * * *" In 1913, this section was amended by inserting therein the words "or marriage" immediately following the word "blood," but, at the same time, brothers and sisters were restricted by amendment to those of blood. The court determined that "mother" or "father," as used in the designated classes of beneficiaries, included stepmother and stepfather, and stated (page 138 of 148 Minn., 180 N. W. 1001): "A stepmother is a relative by affinity, and the relationship continues after the death of the father. Simcoke v. Grand Lodge, A. O. U. W., 84 Iowa, 383, 51 N. W. 8, 15 L. R. A. 114; Anderson v. Royal League, 130 Minn. 416, 153 N. W. 853, L. R. A. 1916B, 901, Ann. Cas. 1917C, 691."

The court concluded its decision with the following statement (page 139 of 148 Minn., 180 N. W. 1001): "It is well settled that the laws and regulations of a society such as the defendant will, and should be, construed strictly in favor of the insured, so as to avoid a forfeiture. * * *"

In Simcoke v. Grand Lodge, supra, it appeared that the insured's mother was married to the plaintiff. She died before the certificate in suit was issued, which was made payable to the plaintiff, the husband of the insured's deceased mother. The statutes of the state of Iowa, chapter 65, Acts 21st Gen. Assem., provide: "No corporation or association organized or operating under this act shall issue any certificate of membership or policy to any person under the age of fifteen years nor over the age of sixty-five years, nor unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir, or legatee of such insured members."

The court, in holding that the payee in the policy was the proper beneficiary under the law, stated (page 9 of 51 N. W., 84 Iowa, 383): "It is urged that the certificate is void because plaintiff is not a 'relative,' within the meaning of the statute. By particular specification the statute comprehends many classes of relatives, and then supplements their use by the term 'relative,' without words of limitation. Nothing seems to indicate that the word is used in a restricted sense. A stepfather is a relative by affinity, and the relationship continues after the death of the wife, on whom the relationship depends. In Spear v. Robinson, 29 Me. 531, it is said: 'By the marriage, one party thereto holds by affinity the same relation to the kindred of the other that the latter holds by consanguinity, and no rule is known to us under which the relation by affinity is lost on a dissolution of the marriage, more than that by blood is lost by the death of those through whom it is derived. The dissolution of a marriage, once lawful, by death or divorce, has no effect upon the issue; and, it is apprehended, it can have no greater operation to annul the relation of affinity, which it produced.' There is nothing in the spirit or purpose of the law that indicates to us that relatives by affinity are not within the legislative intent."

Spear v. Robinson, supra, pertained to the disqualification of a justice of peace. The justice had previously been married to plaintiff's sister, but the marriage had been dissolved by the wife's death prior to the time of the action. In passing upon the objection made to the qualification of the justice, the court used the language quoted in the Simcoke Case. It is significant, however, that there is an utter absence of any authority to sustain the position of the court in that case. No decisions are cited by the Maine court, and, of course, the court was not confronted with a dissolution of marriage by divorce, as distinguished from dissolution by death. The brief statement in Spear v. Robinson, supra, is largely dictum, and, at least in so far as dissolution of marriage may affect the relationship of affinity in determining the qualifications of a judge or juror, the decided weight of authority is to the contrary. It may be admitted, however, that the McGaughey and Simcoke Cases hold, in light of the circumstances therein disclosed, that the relationship by affinity was not extinguished by dissolution by death of the marriage which gave rise to the kinship. But if these cases are predicated upon authority of Spear v. Robinson, supra, then clearly they are based on a decision that expresses the minority view.

There were individual circumstances in the Minnesota and Iowa cases that may have influenced the court to adopt the views expressed therein without a thorough consideration of the effect of the dissolution of marriage. In the McGaughey Case, the insured lived with and continued the filial relationship with the so-called stepmother, and there was, in fact, the apparent relationship of mother and son even after the father's death. A denial of plaintiff's claim to the proceeds of the policy in that case would have resulted in a forfeiture to the company. In Simcoke v. Grand Lodge and Anderson v. Grand Lodge, the insured had specifically designated the plaintiff as the beneficiary to receive the proceeds.

But even though it should be contended that the relationship by affinity continues after the dissolution of the marriage by death, the same rule may not necessarily follow where, without issue, the marriage relationship is extinguished by divorce. The court has been cited to no case except the dictum in Spear v. Robinson, supra, which even suggests that a divorce between the parties still continues the relationship between the in-laws which the marriage created. The wife in this case was the cause of the affinity which existed between Kennedy and her children. When the cause ceases, it should logically follow that the result ceases. No sound reason for any other view occurs to the court.

Affinity is generally defined to be the re-

lationship by marriage between a husband and his wife's blood relatives, or between a wife and her husband's blood relatives. Unlawful or forbidden marriages due to affinity are set forth in Leviticus, chapter XVIII. Some statutes now forbid marriage between kin based on affinity within certain degrees. Incest statutes likewise encompass certain relationships of affinity. Judges and jurors were in some states disqualified due to affinity, and, in the Bankruptcy Act (section 35 [11 USCA § 63]), no referee is eligible to appointment where related by consanguinity or affinity within the third degree to judges of the District and appellate courts, as determined by the common law. The relationship of stepchild and step-parent is predicated on marriage, as are all other relationships of affinity. If the relationship of sisters, brothers, or cousins by affinity is abolished by dissolution of the marital relationship, the same principle must necessarily apply to the affinity between step-parent and stepchild. The entire structure of relationship by affinity is based on a subsisting marriage, not a dissolved one. Marriage in the eyes of the common law rendered the husband and wife as one. It was thought necessary and desirable, therefore, to establish an affinity between the blood relatives of the respective spouses and the parties to the union. But where the union is dissolved, and there are no children of the marriage, society is not particularly served or benefited by the continuance of the fiction when the cause has ceased. Manifestly, it would be contrary to the obvious purposes and objects of fraternal insurance, in view of all the admitted circumstances herein, to say that the relationship of stepfather and stepchildren continued as a matter of law, there being no contention or claim herein that such relationship existed as a matter of fact.

There are, in addition, certain practical aspects which frequently affect the continuance of the relationship by affinity where the dissolution of marriage is caused by death, as distinguished from dissolution by divorce. The laws of descent often give the surviving spouse and the children of the deceased spouse a common interest in the estate of the latter. In this state, for instance, the homestead descends to the children in fee, subject to a life estate in the surviving spouse. The ostensible relationship of step-parent and stepchild is frequently continued in the home

after the death of the parent, and the filial relationship in many homes continues as before. In absence of issue, divorce generally cuts off all alliance. As far as the marriage is concerned, both parties are civilly dead, and under what pretext should the kinship between their respective relatives and the former spouses be considered as still in existence? Fundamentally, there may be no substantial reason for distinguishing between dissolution of marriage by death and dissolution by divorce in determining the instant case. The fact that the marriage was without issue and was dissolved when the insured died—that the cause for the kinship had ceased—would, in harmony with the weight of authority, prevent these claimants from obtaining this fund. At least, the divorce and the other additional facts disclosed do tend to emphasize the absence of any meritorious claim to this insurance on the part of these former stepchildren.

Upon consideration of all the facts and circumstances of the case—the marriage without issue, the divorce and subsequent remarriage, the absence of any testimony or showing that these children ever were, or ever considered themselves to be, a part of the insured's family, and the purposes of this fraternal insurance—it is clear that the court must confine these claimants to the clear, unambiguous, and generally accepted definition of the term "stepchild." No occasion is presented which suggests that there should be any deviation from the interpretation that is generally followed by the weight of authority. It follows, therefore, that the brother and sister, as next of kin in the designated classes under the constitution, are entitled to this insurance fund.

The court adopts the foregoing as its findings of fact in the above matter; and, in harmony with the views herein expressed, the court, as conclusions of law, finds:

That the defendants Mayme Hogan and James P. Kennedy are entitled to a decree granting to them an equal one-half interest, share and share alike, in the sum now deposited with the clerk of this court, less costs and expenses heretofore or to be deducted therefrom, and that the claims of all the other defendants in and to said fund be in all things denied.

A decree may be presented to the court on the usual notice.