[No. 25457. Department Two. May 14, 1935.]

*In the Matter of the Estate of* MARY E. BOUSMAN, *Deceased.*[1]

*William H. Pemberton, John M. Boyle, Jr.,* and *Henry Russell,* for appellant.

*Stotler & Voorhees,* for respondent.

*Wright & Wright, Lundin, Barto & Devin, Mifflin & Mifflin, Landon, Landon & Wheeler,* and *Martin & Martin, amici curiae.*

[1]Reported in 44 P. (2d) 1038.

BLAKE, J.—Some thirty years prior to her death, Mary E. Bousman married Joseph H. Bousman, who predeceased her by a few years. At the time of the marriage, Joseph H. Bousman had an infant son, Henry J. Bousman. The latter remained a member of the household until about the time of his father's death. When Mary E. Bousman died, without issue, she left a will by which she devised to Henry J. Bousman property of an appraised value of less than five thousand dollars. The remainder of the property was devised to a niece.

In the course of administration, Henry J. Bousman, who was named as executor under the will, filed his final report and petition for distribution, alleging that all inheritance taxes due the state of Washington had been paid. The supervisor of the inheritance tax and escheat division of the state of Washington excepted to this part of the report. It is admitted that the inheritance tax has been paid upon the portion of the estate devised to the niece. It was contended by the supervisor that an inheritance tax was also due the state on the portion of the estate devised to Henry J. Bousman. The court held that there was none due. The supervisor has appealed.

The sole question presented is whether, under Rem. Rev. Stat., § 11202 [P. C. § 7053], Henry J. Bousman takes as a stepson or a stranger to the blood. It is appellant's contention that the relation, by affinity, between Mary E. Bousman and Henry J. Bousman ceased upon the death of the latter's father. The contention is supported by an overwhelming weight of authority. See *Brotherhood of Locomotive Firemen etc. v. Hogan,* 5 F. Supp. 598, which contains an exhaustive analysis of cases on the subject; also, *In re Sheard's Estate,* 181 Wash. 62, 42 P. (2d) 34.

Acceding to this rule, it would follow, in the

absence of statute providing otherwise, that Henry J. Bousman would take as a stranger to the blood. *In re Marshall's Estate,* 42 Cal. App. 683, 184 Pac. 43; *In re Butcher's Estate,* 267 Pa. 521, 110 Atl. 163. See, also: *Allen v. Cunningham,* 143 Tenn. 11, 223 S. W. 450. The question for us to determine is whether Rem. Rev. Stat., § 11202 [P. C. § 7053], makes an exception to the rule. The pertinent portions of the statute are:

"The inheritance tax shall be imposed on all estates subject to this and other inheritance tax acts of the State of Washington, at the following rates.

"If passing to or for the use of a father, mother, husband, wife, lineal descendant, stepchild, or lineal descendant of a stepchild, adopted child or lineal descendant of an adopted child of the decedent, or to a son-in-law or a daughter-in-law of the decedent, *being in such relation,* the tax shall be one per centum of any value not exceeding fifty thousand dollars . . . Provided, however, that in the above cases, ten thousand dollars of the net value of any estate so passing shall be exempt from such tax when passing to the surviving spouse of the decedent, or to the father or mother of the decedent and five thousand dollars shall be exempt to each lineal descendant, each·stepchild, each adopted child and each lineal descendant of an adopted child and each *son-in-law* or *daughter-in-law* of the decedent, *such son-in-law or daughter-in-law being in such relation at the time of the death of said decedent."* (Italics ours.)

The key to the problem is to be found in the words "being in such relation," used both in the body of the statute and in the provisos. If these words had been omitted from the statute, the application of the general rule would make sons-in-law, daughters-in-law and stepchildren all strangers to the blood when the tie of affinity is broken. In other words, there was no necessity for including the words at all if they are to be applied to stepchildren, as well as to sons-in-law and daughters-in-law. In view of the general rule, the

words were inserted to serve but one purpose; that is, to make clear a distinction in status between the stepchild and the son-in-law or daughter-in-law in cases where the tie of affinity is broken.

And there is a very sound reason for the distinction. Although the record in this case does not so show, let us assume that the property acquired by Mary E. Bousman and Joseph H. Bousman was community property, and that the latter left the entire community estate to his widow. Would it be just or equitable to treat the son, who ultimately inherits his property, as a stranger to the blood, simply because the tie of affinity is broken? To do so would deny the son a consideration extended by the statute to nephews and nieces. It is clear to us that the legislative purpose in using the words "being in such relation" was to place the stepchild, under all circumstances, upon the same footing as a natural child of the step-parent.

Some contention is made that the words "being in such relation," as used in the body of the statute, refer to "stepchild," as well as "son-in-law" and "daughter-in-law." In view of the very specific use of the words in the proviso, in respect to "son-in-law" and "daughter-in-law," we do not think there is any sound basis for the contention. Furthermore, as we have seen, such a construction would render the phrase entirely superfluous.

Judgment affirmed.

MILLARD, C. J., STEINERT, HOLCOMB, and MITCHELL, JJ., concur.