MATTER OF MOURILLON

In Visa Petition Proceedings

A-19731000

*Decided by Board September 22, 1981*

(1) Under the law of Curacao, Netherlands Antilles, legitimation of a child born out of wedlock is effected by the subsequent marriage of the natural parents together with their prior or contemporaneous acknowledgment of the child.

(2) An act of acknowledgment of paternity in Curacao without the marriage of the natural parents does not place the acknowledged child in the same status as a legitimated child and, therefore, the petitioner did not qualify as his father's "child" under section 101(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. 1101(b)(1)(C).

(3) In order to qualify as stepsiblings, either (1) the marriage which created the step-relationships must continue to exist, or (2) where the parties to that marriage have legally separated or the marriage has been terminated by death or divorce, a family relationship must continue to exist as a matter of fact between the "stepsiblings."

(4) Since the petitioner and beneficiary once qualified as "children" of their stepmother/mother and continue to maintain their family relationship, the beneficiary qualifies as the petitioner's "sister" under section 203(a)(5) of the Act, 8 U.S.C. 1153(a)(5), even though the record does not show whether the petitioner's father and the beneficiary's mother are still alive and remain married.

ON BEHALF OF PETITIONER: Mary L. Sfasciotti, Esquire
815 — 57th Street
Kenosha, Wisconsin 53140

BY: • Milhollan, Chairman; Maniatis, Maguire, Morris, and Vacca, Board Members

This matter is before the Board on appeal from the District Director's decision of April 9, 1980, denying the petition to classify the beneficiary as the sister of a United States citizen under section 203(a)(5) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(5). The appeal will be sustained.

The petitioner is a 52-year-old citizen of the United States who was born out of wedlock in the British West Indies on December 16, 1928. His parents never married, and only a few months after his birth his mother left the household, never to return. The petitioner and his father subsequently immigrated to Curacao, Netherlands Antilles (Dutch West Indies). There, on July 22, 1942, his father married, and they all lived together as a family unit until the petitioner came to the United States

in late 1954. In September 1953, the beneficiary was born in Curacao to the petitioner's father and stepmother. The petitioner and beneficiary have apparently continued to maintain their family ties, with the record reflecting that the beneficiary came to the United States in 1971 as a nonimmigrant student and was residing with the petitioner at the time the instant petition was filed on October 30, 1974.

The District Director correctly noted that in order to establish the existence of a sibling relationship the petitioner must show that he and the beneficiary are, or once were, "children" of a common "parent" within the meaning of section 101(b)(1) and (2) of the Act, 8 U.S.C. 1101(b)(1) and (2). *Matter of Heung*, 15 I&N Dec. 145 (BIA 1974). The District Director then examined the relationship of the petitioner and beneficiary through their father, and concluded that they did not qualify as siblings under the Act because the petitioner was illegitimate and had not been legitimated by his father. Therefore, he denied the petition.

On appeal, the petitioner asserts that he was legitimated by his father according to the law of Curacao, Netherlands Antilles. He also argues that he and the beneficiary are qualified siblings by virtue of their relationship through their other common parent, their stepmother/mother.

The petitioner has now submitted for the record certain provisions of Title XII, Book I of the Civil Code of Curacao ("the Code") which pertain to paternity and filiation in Curacao, Netherlands Antilles.[1] The petitioner contends that under either the legitimation provisions of Title XII, section 2, or the acknowledgment provisions of section 3 of that title, he qualifies as a legitimated child under section 101(b)(1)(C) of the Act.[2] A careful examination of these provisions reveals that this argument is without merit.

---

[1] These materials were prepared by Dr. Karel Wennink, Legal Analyst in the European Law Division, Law Library of the Library of Congress, and come from an 1875 translation, J.H.R. Beaujon, *trans.*, *Civil Code for the Colony of Curacao* (1875). Dr. Wennink indicates in his cover letter that, "The latest Dutch text available in the Library of Congress and at the Embassy of the Netherlands in Washington, D.C., is dated 1950, and a comparison of it with the translation shows that the appended text was still in effect in 1929 and 1936."

[2] "The term 'child' means an unmarried person under twenty-one years of age who is—

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation."

Under section 2 of the Code, legitimation of a child born out of wedlock occurs only by the subsequent marriage of the natural parents together with a prior or contemporaneous acknowledgment of the child.[3] Upon legitimation, the child acquires the same rights as if he were legitimate at birth.[4] Thus, it is clear that because the petitioner's natural parents never married he has not been legitimated under the law of Curacao, Netherlands Antilles.

As for the petitioner's acknowledgment claim, we note preliminarily that the general rule outside of communist-bloc countries is that acknowledgment alone does not constitute legitimation; there must also be a subsequent marriage of the natural parents.[5] *Matter of Van Pamelen,* 12 I&N Dec. 11, 13 (BIA 1966). *See, e.g., Matter of Reyes,* 16 I&N Dec. 475 (BIA 1978); *Matter of Quispe,* 16 I&N Dec. 174 (BIA 1977); *Matter of Mandewirth,* 12 I&N Dec. 199 (BIA 1967); *Matter of The,* 10 I&N Dec. 744 (BIA 1964). A "legitimated" child is one placed "in all respects upon the same footing as if begotten and born in wedlock." *Pfeifer v. Wright,* 41 F.2d 464, 466 (10th Cir. 1930), *cert. denied,* 283 U.S. 896 (1931). Only where acknowledgment places the child in the same status as a legitimated child will acknowledgment be deemed the equivalent of legitimation. *See Matter of Reyes,* 17 I&N Dec. 512 (BIA 1980). Such is not the case here. Acknowledgment under section 3 of the Code merely creates "civil rights" between the acknowledged child and his parents.[6] While this term is apparently not defined, the acknowledgment provision, unlike the preceeding legitimation provision, does *not* declare that an acknowledged child enjoys the same rights as if he were born legitimate. Therefore, it must be said that because the law of the Netherlands Antilles does not place an acknowledged child in the same status as a legitimated child, it does not make acknowledgment the equivalent of legitimation. This conclusion also finds support in the fact that because the law of the Netherlands Antilles specifically differentiates between acknowledgment and legitimation in the two statutory provisions it is reasonable to presume, absent an affirmative showing to the contrary, that the law does not create a distinction without a difference. *See Zeigler Coal Co. v. Kleppe,* 536 F.2d 398, 406 (D.C. Cir. 1976) — ("[A] statute should not be construed in such a way as to render certain provisions superfluous or insignificant."); 2A D. Sands, *Sutherland Statutory Construction,* section 46.06 (Rev. 3d ed. 1973).

---

[3] Title XII, § 2, art. 321. In the event that the parents neglected to acknowledge their natural child at or before the time of their marriage, or where one of the parents dies before their intended marriage, legitimation can occur by a "letter of legitimation" issued by the Governor, after consultation with the "high court of justice." Title XII, § 2, arts. 323 and 324.

[4] Title XII, § 2, art. 326.

[5] Or, in some instances, a royal or presidential decree of legitimation will suffice.

[6] Title XII, § 3, art. 329.

*land Statutory Construction*, section 46.06 (Rev. 3d ed. 1973).

In view of the foregoing, we find that the petitioner does not qualify as a legitimated child under section 101(b)(1)(C) of the Act. Therefore, he and the beneficiary do not qualify through their father as "brother" and "sister" under section 203(a)(5) of the Act.

Turning next to the issue of the petitioner's relationship to the beneficiary through their stepmother/mother, it is clear that the beneficiary once qualified as the legitimate "child" of her mother under section 101(b)(1)(A) of the Act. As for the petitioner, section 101(b)(1)(B) defines the term "child" as an unmarried person under the age of 21 years who is a "stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred." Here, the petitioner's natural father married when the petitioner was 13 years of age, thus giving rise to a valid stepmother/stepchild relationship under the Act. *Matter of McMillan*, 17 I&D Dec. 605 (BIA 1981). Therefore, pursuant to *Matter of Heung*, *supra*, at the time of the beneficiary's birth she and the petitioner were qualified siblings as the "children" of a common "parent." *See Matter of Ferreira*, 16 I&N Dec. 494 (BIA 1978); *cf. Matter of Bourne*, 16 I&N Dec. 367 (BIA 1977).

One further issue remains. Unlike consanguineous relationships, step-relationships can be terminated by the death or divorce of the parties whose marriage created the step-relationship.[7] Thus, in the case of stepsiblings[8] it is appropriate to determine not only whether the petitioner and beneficiary were once the "children" of a common "parent," but also whether the marriage which created the step-relationships still exists at the time the visa petition to accord the stepsibling classification is being considered. Where that marriage does still exist, the stepsibling relationship likewise continues to exist. Difficulties arise, however, where this is not the case.

In the context of stepparent and stepchild, we recently held that where the parties to the marriage which created that step-relationship have legally separated or where the marriage has been terminated by divorce or death, the appropriate inquiry is whether a family relationship has continued to exist as a matter of fact between the stepparent and stepchild. *Matter of Mourrer*, 17 I&N Dec. 613 (BIA 1981); *accord,*

---

[7] *See, e.g., Brotherhood of Locomotive F. & E.* v. *Hogan*, 5 F.Supp. 598, 605 (D. Minn. 1934): "The relationship of stepchild and stepparent is predicated on marriage, as are all other relationships of affinity. . . . The entire structure of relationship by affinity is based on a subsisting marriage, not a dissolved one."

[8] While the petitioner and the beneficiary are indeed also half siblings by virtue of their common father, they cannot qualify as brother and sister through him. *See* pp. 3-5, *supra.* Therefore, they can only seek to qualify as stepsiblings through the petitioner's stepmother, the beneficiary's mother.

*Brotherhood of Locomotive F. & E. v. Hogan, supra; see also Matter of Pagnerre,* 13 I&N Dec. 688 (BIA 1971). A similar inquiry is no less appropriate in the case of stepsiblings. Accordingly, we hold that in order to qualify as stepsiblings either (1) the marriage which created the step-relationships must continue to exist, or (2) where the parties to that marriage have legally separated or the marriage has been terminated by death or divorce, a family relationship must continue to exist as a matter of fact between the "stepsiblings." Whether the stepsiblings continue to maintain a family relationship is a question of fact which must be determined under the particular circumstances of each case.

Here, the record does not clearly show whether the petitioner's father and the beneficiary's mother are still alive and remain married. Nevertheless, as noted earlier, the record reflects that the petitioner and the beneficiary do continue to maintain their family relationship, including the fact that the beneficiary has lived with the petitioner during her stay in the United States as a nonimmigrant student. Therefore, it has been established that they were "children" of a common "parent" and that their relationship as stepbrother and stepsister continues to exist. Accordingly, the beneficiary qualifies as the petitioner's sister under section 203(a)(5) of the Act.

**ORDER:** The appeal is sustained and the petition is approved.